UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS P. KOESTLER,

                                    Petitioner,

                -against-                                  Civil No. 16-cv-7175 (AJN)

MARTIN SHKRELI,

                                    Respondent.


DECLARATION OF RICHARD J.J. SCAROLA
IN SUPPORT OF MOTION TO COMPEL
JUDGMENT ENFORCEMENT DISCOVERY FROM
THE JUDGEMENT DEBTOR MARTIN SHKRELI AND FROM
KANG HAGGERTY AND FETBROYT LLC

        RICHARD J.J. SCAROLA declares under the penalty for perjury in accordance with 28

U.S.C. §1746:

        1.      I am a member of the Bar of the State of New York and a member of Scarola

Zubatov Schaffzin PLLC, attorneys for the petitioner in this case and the applicant for relief

herein.  I make this Declaration in support of petitioner's motion to compel judgement

enforcement discovery being brought by a proposed order to show cause, pursuant to judgment

enforcement discovery requests properly issued and served, from the judgement debtor,

respondent Martin Shkreli, and from non-party Kang Haggerty and Fetbroyt LLC.


                        *Statement of Facts and Background*

        2.      The petitioner in this case, Thomas P. Koestler (the "Creditor"), was awarded a

judgment in this Court against respondent Martin Shkreli for the amount of $2,614,930 in

accordance with this Court's Order dated and entered on February 6, 2017 (ECF #22, Ex.[1] A) (the "Judgment").  One of the attorneys for Mr. Shkreli, Edward Kang, has confirmed in communications with me over the last few months that Mr. Shkreli has not satisfied the Judgment or paid any amount whatsoever toward the Judgment.

       3.      By way of background, the Judgment arises from an award in arbitration, confirmed by this Court, which in turn arose from amounts owed by Mr. Shkreli to the Creditor.  (*Id.*)

       4.      By way of further background, while the Creditor's Judgment has nothing to do with Mr. Shkreli's other business activities, Mr. Shkreli has significant public notoriety as a result of those activities and is currently incarcerated.   Specifically, he was sentenced by the United States District Court for the Eastern District of New York (Matsumoto, J.) to serve 84 months in prison after conviction by a jury of securities fraud on March 9, 2018.  (ECF #565 in *USA v. Shkreli*, 1:15-cr-00637-KAM (E.D.N.Y.) (the "Criminal Case"))  Mr. Shkreli is also known even more widely for his conduct in connection with the pharmaceutical product Daraprim, a drug used, among other purposes, for treatment of certain infections and persons with compromised immune systems such as patients suffering from AIDS, for which Mr. Shkreli is reputed to have been responsible for a 5,000+% price increase after the drug was acquired by a company he controlled at the time, Turing Pharmaceuticals ("Turing").  (*See* Exs. B and C (also available at https://www.forbes.com/sites/luketimmerman/2015/09/23/a-timeline-of-the-turing-pharma-controversy/#1af0e56e771d and https://www.nytimes.com/2015/09/21/business/a-huge-overnight-increase-in-a-drugs-price-raises-protests.html))  Numerous public documents I have seen reveal that it is well-known that Turing later changed its name to Vyera Pharmaceuticals, LLC ("Vyera").

---

[1] References to "Ex." are to exhibits attached to this Declaration.

5.      We have confirmed through correspondence as well as numerous publicly published reports that Mr. Shkreli is currently incarcerated at the Federal Correctional Institution — Allenwood Low in White Deer, PA  17887 (the "FCI").

6.      Notwithstanding his conviction and incarceration, Mr. Shkreli apparently had and has extensive assets sufficient to satisfy the Judgment.

7.      Mr. Shkreli also owned substantial assets subject to a forfeiture order in the Criminal Case (its ECF #680, Ex. D), including art and collectibles such as a Picasso paining and a unique, one-copy-only music album purchased by Mr. Shkreli for $2 million from its creators, the musical group Wu-Tang Clan (an album created with provision that it could not be played widely and/or exploited commercially), and which is the subject of a coming Netflix documentary (Ex. E (also available at https://www.nme.com/en_asia/news/netflix-film-on-martin-shkrelis-2-million-purchase-of-wu-tang-clan-album-announced-2738462#:~:text=Netflix%20have%20announced%20details%20of,directed%20by%20Paul%20Downs%20Colaizzo)).

8.      Mr. Shkreli currently has additional substantial assets.  Mr. Shkreli is involved in ongoing litigation over his role and activities with Turing/Vyera, and is a defendant in a case brought by the Federal Trade Commission (the "FTC"), along with a number of state attorneys general, *FTC et al. v. Vyera Pharmaceuticals, LLC, et al.*, 1:20-cv-00706-DLC (S.D.N.Y.) (the "FTC Case").  The FTC has alleged in its Amended Complaint in that case (Ex. F, FTC Case ECF #91) with regard to Phoenixus AG (Phoenixus") that Mr. Shkreli  "owns approximately [redacted] of Phoenixus shares and controls approximately [redacted] of shareholder votes," and that Phoenixus in turn wholly owns Vyera (formerly known as Turing) today.  (*Id*., ¶¶ 25-26, 46)

Mr. Shkreli answered the FTC Amended Complaint allegations on September 15, 2020, disclosing his specific ownership and voting interests in Phoenixus (FTC Case ECF #258), but by letter application dated October 1, 2020 (Ex. G , FTC Case ECF #287), his counsel asked the Court that that version of Mr. Shkreli's Answer be stricken in favor of a redacted version and the Court in the FTC case granted that application by Order dated October 5, 2020 (Ex. H, FTC Case ECF #288).  A copy of Mr. Shkreli's redacted Answer is at (Ex. I, FTC Case ECF #287-1).  The redacted version of the answer does not disclose Mr. Shkreli's ownership and voting interests in Phoenixus (*see id*. at ¶ 46) (though it confirms that Phoenixus is the sole owner of Vyera (*id*. at 25-26)).  These are highly unusual circumstances in that the original answer and disclosure of the pertinent information was a matter of the public record for approximately 20 days, was viewable and viewed by counsel and many others and was in fact apparently published by some on the Internet.  In light of the October 1 redaction Order in the FTC Case (Ex. H, FTC Case ECF #288), it is unclear whether the originally filed information may be quoted or referenced as to its content.  This is further reason the Judgment Creditor needs to compel proper judgment enforcement discovery.  The circumstances speak for themselves as to whether there is a good faith basis for the inquiry, and it is submitted that there is such good faith basis.

9.      Notably, Mr. Shkreli was apparently found by prison authorities to be operating the business formerly known as Turing — now known as Vyera — while incarcerated (apparently including by means of a contraband cell phone) in contravention of the restrictions to which he was subject.  (*See* Ex. J (also available at https://www.wsj.com/articles/martin-shkreli-steers-his-company-from-prisonwith-contraband-cellphone-11551973574))

10.      Mr. Shkreli also has had the wherewithal to commence substantial litigation while incarcerated.  In one instance, in 2019, he commenced litigation against Retrophin, Inc., a

company in which he had previously had a substantial or controlling interest, and certain of its senior officers and Directors.  Based upon the public docket in that case, Mr. Shkreli's Complaint sought recovery of at least $30 million, and the case was apparently settled (apparently on confidential terms), in a manner favorable to Mr. Shkreli.  S*ee Shkreli v. Aselage et al.*, 1:19-cv-05120-DAB (S.D.N.Y.), ECF #5 at ¶ 278 and #18)

11.     Currently, according to the FTC Case docket, Mr. Shkreli, one of his colleagues, Kevin Mulleady (who is apparently the current Chairman of Phoenixus and its former CEO of Vyera[2]), Vyera and Phoenixus are all defendants in the FTC Case and the litigation is extremely active and proceeding on a fast track.  The FTC Case, according to the case docket, defendants have been or are currently represented in the case by a number of prominent law firms:

Mr. Shkreli:  Duane Morris LLP and Kang Haggerty and Fetbroyt LLC

Mr. Mulleady:  Kasowitz Benson Torres LLP

Vyera:  Morgan, Lewis & Bockius LLP (previously, Dechert LLP)

Phoenixus:  Morgan, Lewis & Bockius LLP (previously, Dechert LLP)

and we submit it is reasonable to believe that those large and well-known law firms are being paid substantial sums by the defendants in the FTC Case for their defense.  Given that the defendants are Mr. Shkreli, two companies of which he is apparently the principal owner (directly or indirectly) and in which he has the controlling interest and Mr. Mulleady, Mr. Shkreli's colleague and the Chairman of one of those companies, it is also reasonable to believe that the payments for that legal representation are coming from the two corporate defendants Mr. Shkreli effectively owns and controls or from other resources in Mr. Shkreli's control.

---

[2] *See* FTC Case ECF #287-1, ¶ 47, Ex. I.

A. *Discovery Sought from Mr. Shkreli*

12.     Mr. Shkreli was served by the Creditor, through counsel, with judgment

enforcement papers in an effort to enforce the Judgment at issue here on June 5, 2020.  Those

papers were served pursuant to FRCP Rule 69, authorizing use of New York State judgment

enforcement devices.  The papers included an information subpoena in accordance with NY

CPLR 5224.  A copy of the information subpoena that the Creditor asks Mr. Shkreli be

compelled to answer by this application (together with a copy of certain of the related judgment

enforcement papers sent at the same time but not currently in issue) is attached as Ex. K.

13.     The judgment enforcement papers were served upon Mr. Shkreli at his place of

incarceration, addressed to:

> Mr. Martin Shkreli
> (Inmate I.D. #87850-053)
> Federal Correctional Institution (FCI) – Allenwood Low
> P.O. Box 1000
> White Deer, PA  17887

as that addressed is published ad available from the FCI.  As discussed below in § D., (i) the

prison authorities at Mr. Shkreli's place of incarceration returned acknowledgement of receipt of

the package sent and (ii) Mr. Shkreli's counsel also wrote to the Creditor's counsel discussing

the content of papers sent only to Mr. Shkreli.

B. *Discovery Sought from the Kang Firm*

14.     Similar judgment enforcement papers have been served (on June 9, 2020) to one

of the principal law firms, Kang Haggerty and Fetbroyt LLC (the "Kang Firm"), representing

Mr. Shkreli in the FTC Case and also in a variety of other matters (Ex. L), because we believe

that those attorneys have material, non-privileged information pertinent to the effort to collect the

Creditor's Judgment.  As with Mr. Shkreli, The Kang Firm was served by the Creditor, through

counsel, with judgment enforcement papers in an effort to enforce the Judgment at issue here pursuant to FRCP Rule 69, authorizing use of New York State judgment enforcement devices. The papers included an information subpoena in accordance with NY CPLR 5224. (*Id.*)

15.     By way of background, we were contacted by Edward Kang of the Kang Firm at various times in 2020 to discuss the Judgment.  As noted above, Mr. Kang and the Kang Firm also represent Mr. Shkreli as co-counsel in the FTC case.  Further information about the contacts from the Kang Firm could be provided, but in deference to the possibility that Mr. Shkreli or Mr. Kang might assert that such information is restricted from disclosure (for example, as communications constituting settlement communications that should not be disclosed under a rule addressed to settlement communications), that further detail is not set forth here.

16.     The Judgment Creditor and his counsel understand and believe that Mr. Kang and his firm have been serving in the role as a general business and legal advisor to Mr. Shkreli on a variety of matters, not all of which would be subject to the attorney-client privilege merely because Mr. Shkreli is a client and Mr. Kang and his colleagues are attorneys.  I discuss in § E. below that a similar position as to the role of the Kang Firm has been taken by the FTC in the FTC Case and that the FTC's position has been sustained by the Court in that case at least in material part.

17.     At bottom, there are strong indications leading us to believe that the Kang Firm possesses both information pertinent to judgment enforcement not subject to the attorney-client privilege, and also possibly money held by for Mr. Shkreli's benefit (in escrow or otherwise) that would be recoverable through judgment enforcement efforts.

C.  *The Discovery Sought from Mr. Shkreli and the Kang Firm Has Not Been Provided*

18.      Neither Mr. Shkreli nor the Kang Firm have provided any formal written objection to the judgment enforcement papers served upon them and neither has provided substantive responses.  Accordingly, the Judgment Creditor makes this request that this Court compel those responses.[3]

19.      For the sake of completeness, I address below some points raised in informal correspondence we received from the Kang Firm that we anticipate could be raised in opposition to this application and further background that we believe would defeat any objection to the subpoenas served if objection were to be made.

D.  *Points Mr. Shkreli May Raise (and the Reasons They Would Be Unavailing)*

20.      We believe the written questions posed to Mr. Shkreli, Ex. K, are comprehensive, but reasonably tailored in the circumstances to seek information about Mr. Shkreli and his assets which will assist the Creditor in collecting the Judgment.  In particular, the inquiries address the basic questions of assets Mr. Shkreli has or has received, assets of which he has disposed, assets and interests held for him by others and his interests in the Phoenixus/Vyera companies.

21.      In the interest of completeness, we also point out the following.

22.      We followed the procedures in the FRCP and related procedures available under New York's Civil Practice Law and Rules which the FRCP gives a judgment creditor authority to use.  FRCP 69(a)(2) provides:  "In aid of the judgment or execution, the judgment creditor …

---

[3] We note that other judgment enforcement papers have been served upon persons and entities affiliated in one way or another with Mr. Shkreli.  While remarkably few responses have been received, an effort to compel responses from those persons and entities is not joined here in the hope that complete responses from Mr. Shkreli and the Kang Firm will be sufficient to allow enforcement of the Judgment through appropriate turnover proceedings.  The Creditor will of course raise issues as to other judgment enforcement papers and insufficiency of responses as necessary, if it becomes necessary.

may obtain discovery from any person — including the judgment debtor — as provided in these rules or by the procedure of the state where the court is located." FRCP 45 of course provides generally for the use of subpoenas. NY State CPLR 5201 *et seq*. more specifically provides for, among other measures, use and service of judgment enforcement papers known as restraining notices, subpoenas and information subpoenas. NY CPLR 5224 is addressed to information subpoenas that, as described therein, provide written questions to a judgment debtor or other person to be answered under oath and returned promptly to the judgment creditor/counsel.

23.     As noted above, Mr. Shkreli was served at the FCI facility where he is incarcerated with a NY CPLR 5224 information subpoena (among other judgment enforcement papers). (Ex. K) FCI prison officials acknowledged receipt of the package sent (though indicated that a postage-paid envelope included in accordance with the NY CPLR procedures would be held because Mr. Shkreli is an incarcerated person). (Ex. M)

24.     Correspondence later received from the Kang Firm confirmed that both Mr. Shkreli and Mr. Shkreli's counsel at the Kang Firm had received these papers because the Kang Firm attorneys stated they were aware of the planned service of similar discovery documents on another person associated with Mr. Shkreli, Evan Greebel. The fact that the Creditor planned such service was not disclosed anywhere except in the one and only set of related papers sent to Mr. Shkreli (Mr. Greebel had not yet been served and no other paper outside of the Creditor's counsel's possession mentioned the plan to serve Mr. Greebel). In other words, Mr. Shkreli and his counsel could only have known of the plan to serve Mr. Greebel through the papers delivered to Mr. Shkreli. (An electronic copy of certain papers was only later provided to the Kang Firm at their request.)

25.     No objection or other formal response in accordance with NY CPLR requirements

was made by or on behalf of Mr. Shkreli with regard to the NY CPLR 5224 information subpoena discovery inquiries to him.

26.    The Kang Firm, in informal correspondence, asserted that Mr. Shkreli could not be served at his place of incarceration, in its correspondence with the Creditor's counsel, stating that Mr. Shkreli was residing outside the jurisdictional scope of a permissible judgment enforcement information subpoena.  The Kang Firm is not correct.

27.    The reasons are discussed in the accompanying Memorandum, *Argument* § I.  In sum, the law is well-settled that an incarcerated person is presumptively deemed to reside where, in substance, he resided prior to incarceration, absent specific and concrete evidence to rebut the presumption by establishing that the prisoner had taken affirmative steps to reorder his affairs so as to change citizenship to a different place.

28.    Mr. Shkreli has recently affirmed his New York citizenship.  He made a recent application for early release from prison because of concerns over exposure to the coronavirus pandemic and his assertions he could find a cure for the novel coronavirus pandemic/COVID-19 and indicated in those papers that if released he would in fact continue to reside in New York City (with his fiancé).  (Ex. N, pp. 1, 17, 20-21 (ECF #729 in the Criminal Case))

29.    Additional authority that service could be properly made upon Mr. Shkreli is set forth in the accompanying Memorandum (even if the judgment debtor resides outside the State of New York at the time).

30.    We provided in writing to the Kang Firm the reasons Mr. Shkreli could not avoid the information subpoena based upon his current status as an incarcerated person in Pennsylvania.  The Kang Firm provided no response or any reason to conclude Mr. Shkreli is not required to respond fully to the information subpoena (and no cognizable written objection to particular requests).

E.  *Points the Kang Firm May Raise (and the Reasons They Would Be Unavailing)*

31.     As with the written questions to Mr. Shkreli, the same questions posed to the
Kang Firm are comprehensive, but reasonably tailored in the circumstances to seek information
about Mr. Shkreli and his assets that will assist the Creditor in collecting the Judgment.  (Ex. L)
As with Mr. Shkreli, the Kang Firm has not responded, at least by way of any formal response, to
the information subpoena served upon it.  The Kang Firm's full and complete responses should
also be compelled by an Order from this Court.

32.     In the interest of completeness, we point out the following.

33.     First, two issues raised with us by the Kang Firm are easily dispatched.  The Kang
Firm initially stated that a necessary certification in the information subpoena required by CPLR
5224 was missing, and also that a required self-addressed stamped envelope for return of the
information subpoena was missing.  We pointed out the location of the certification and the Kang
Firm then acknowledged that it was properly stated.  With regard to the ostensibly missing self-
addressed stamped envelope, I pointed out that it was personally observed to be included in the
envelope sent to the Kang Firm, but that another could be supplied on request if that would be
necessary to put the issue to rest.  No request for another such envelope or any other further
comment on the subject was received from the Kang Firm.

34.     Second, the Kang Firm asserted generally that information sought might be
subject to the attorney-client privilege.  It did not make any particularized objection.  Certainly,
no genuinely privileged information should be turned over.  At the same time, (i) the bulk of the
information sought by its nature would not be subject to the privilege (for example, information
as to Mr. Shkreli's assets is not a request for information constituting the request for or giving of
legal advice), and (ii) recent proceedings in the FTC Case make clear that substantial information

possessed by the Kang Firm concerning Mr. Shkreli is not subject to the attorney-client privilege, even as apparently now conceded by Mr. Shkreli himself.

35.     As to this latter point, the Court in the FTC Case has apparently recently determined that at least many communications Mr. Shkreli has had with the Kang Firm while in prison are not privileged (at least because they were not had in a confidential setting, if not for additional reasons inherent in the nature of the communications), including many with Kang Firm attorney Kandis Kovalsky which were apparently recorded by the federal Bureau of Prisons and which the FTC has accessed through the Bureau of Prisons.  (Ex. O (FTC Case ECF #278)) The parties to that case are currently reviewing and negotiating as to which communications will be deemed not privileged (Ex. P (FTC Case ECF #284)), but the Court has already directed that some information pertaining to the Kang Firm previously filed under seal as being privileged be unsealed.

36.     One of the documents recently unsealed is correspondence from the FTC to the Court asserting bases for contending that the Kang Firm possesses information pertinent to Mr. Shkreli's assets and a possible effort to shield them from creditors and potential creditors:

> "Based on Mr. Shkreli's submission to the Court, it is clear that Ms. Kovalsky has communicated with Mr. Shkreli on a wide range of legal and business issues, some of which were relevant to the FTC's investigation and to this case. … During our pre-complaint investigation, the FTC learned that Mr. Shkreli was considering placing his Phoenixus shares in a trust.  Ms. Kovalsky appeared to be advising Mr. Shkreli on this issue. … The FTC was concerned that Mr. Shkreli might be trying to shield his Phoenixus assets … ."

> "In addition, it has also become clear that Ms. Kovalsky operates as Mr. Shkreli's advisor on other relevant business matters.  For example, Ms. Kovalsky appears to have acted as a conduit for communications from others to Mr. Shkreli on matters that were, as Mr. Shkreli put it to co-Defendant Kevin Mulleady, "too sensitive to talk about … ."

> (Ex. Q (FTC Case ECF #282))

37.     While this is the FTC's contention, not proof, we submit that it supplies more than a good faith basis to believe that the Kang Firm is possessed of unprivileged information pertaining to Mr. Shkreli's assets from which the Creditor seeks to recover and to ask for that material in discovery.

38.     To complete the discussion of comments received from the Kang Firm, the question was raised whether the Kang Firm could not properly be served with the judgment enforcement papers at issue because it is not within New York State.  In fact, the Kang Firm may be so served because it is located within 100 miles of our law firm's office (a measurement apparently not contested by the Kang Firm).  FRCP Rule 69 provides that judgment enforcement procedures "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies" and that a creditor may obtain enforcement in aid of discovery "as provided in these rules or by the procedure of the state where the court is located."  As discussed, consistent with this Rule, we served the Kang Firm with a New York State information subpoena.  FRCP 69's provision that "a federal statute governs to the extent it applies" and that a creditor may seek discovery "as provided in these rules" permits the Creditor to use not only the New York State subpoena procedure, but also to serve a Rule 45 subpoena. Rule 45(c) provides that a creditor may serve a subpoena *duces tecum* on a non-party such as the Kang Firm "within 100 miles of where [it] … regularly transacts business in person … ."  Thus, a Rule 45(c) subpoena *duces tecum* for a live deposition with document production may be served upon the Kang Firm by the Creditor seeking the same information being sought now by the less burdensome means of the NY CPLR 5224 information subpoena procedure.  After diligent search, no case identified concludes that the CPLY 5224 procedure is not available in this scenario, and certainly none has been identified by the Kang Firm to the Creditor's counsel.

39.     If for any reason the Court would find that the CPLR 5224 procedure were unavailable, we would of course serve such a Rule 45(c) subpoena. The Creditor might still proceed in that way at a later point. But the Kang Firm has identified no case or other authority to us to the effect that the less burdensome New York State information subpoena device may not also be used as permitted by the subpoena authority set for in FRCP 45(c) and 69.

      F.  *We made a Good faith Effort to Confer with Mr. Shkreli's Counsel*

40.     Pursuant to FRCP 37(a)(5)(A), and 37(d)(3), the Creditor also seeks an order directing Mr. Shkreli and the Kang Firm to pay the Creditor's reasonable expenses incurred in making this application, including reimbursement of reasonable attorneys' fees. In connection with that part of the application, I certify that we made a good faith effort to confer or at least attempt to confer with Mr. Shkreli's counsel/the Kang Firm in an effort to obtain the disclosure at issue without court action. We believe we replied to all informal protests, but they ceased responding and did not comply with the disclosure requests at all.

      G.  *Service Should be Directed as Set Forth in the Proposed Order to Show Cause*

41.     The accompanying draft proposed order to show cause provides for service upon each of respondents by both Federal Express overnight courier delivery or USPS next available day delivery and certified mail, returned receipt requested delivery, in each case at the address where they were served with the judgment enforcement papers in issue (for Mr. Shkreli, at the prison where he is incarcerated, and for the Kang Firm, at its main office in Philadelphia, Pennsylvania). A copy of the papers would also be sent by email to attorney Kandis Kovalsky at the Kang Firm. It is self-evident from the facts discussed above that both respondents received the earlier papers by the certified mail method, it appears that the Kang Firm represents Mr. Shkreli in practice in this matter and the courier service delivery (along with email to the Kang

Firm) is further assurance that both respondents will receive service.  (Scarola Decl., ¶ 41)

Dated:  October 8, 2020
       New York, NY

                                                   Richard J.J. Scarola