UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS P. KOESTLER,

                                  Petitioner,

        -against-                          Civil No. 16-cv-7175 (AJN)

MARTIN SHKRELI,

                                  Respondent.

MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL JUDGMENT ENFORCEMENT DISCOVERY FROM
THE JUDGEMENT DEBTOR MARTIN SHKRELI AND FROM
KANG HAGGERTY AND FETBROYT LLC

SCAROLA ZUBATOV SCHAFFZIN PLLC
*Attorneys for Petitioner Thomas P. Koestler*
1700 Broadway, 41st Floor
New York, NY  10019
Tel.:  (212) 757-0007

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

*Statement of Facts and Background* ........................................................................................ 1

        A.   *Discovery Sought from Mr. Shkreli* ................................................................. 5

        B.   *Discovery Sought from the Kang Firm* .............................................................. 6

        C.   *The Discovery Sought from Mr. Shkreli and the Kang Firm Has Not Been Provided* ........................................................ 8

I.     THERE IS NO BASIS FOR MR.SHKRELI NOT TO FULLY RESPOND TO THE CREDITOR'S JUDGMENT ENFORCEMENT INFORMATION REQUESTS ............................................................ 8

II.    THERE IS NO BASIS FOR THE KANG FIRM NOT TO FULLY RESPOND TO THE CREDITOR'S JUDGMENT ENFORCEMENT INFORMATION REQUESTS ....................................................... 11

III.   THE RESPONDING PARTIES SHOULD BE COMPELLED TO REIMBURSE THE CREDITOR'S ATTORNEYS' FEES AND COSTS ASSOCIATED WITH THIS APPLICATION ................................................. 15

IV.   THE COURT SHOULD DIRECT THAT THE RESPONDING PARTIES BE SERVED WITH THIS APPLICATION AS PROPOSED IN THE ACCOMPANYING DRAFT ORDER TO SHOW CAUSE ....................................... 16

TABLE OF AUTHORITIES

**Cases**

*Aquavella v. Equivision, Inc.*,
  181 Misc.2d 322 (S. Ct. Monroe Ct. 1999) ............................................................................. 11

*Hall v. Curran*,
  599 F.3d 70 (1st Cir. 2010) ..................................................................................................... 10

*Harbor Footwear Group, Ltd. v. ASA Trading, Inc.*,
  1 Misc.3d 911(A) (S. Ct. Nassau Co. 2004) ........................................................................... 11

Sabol v. Brooks,
  469 F.Supp.2d 324 (D. Md. 2006) .......................................................................................... 15

*U.S. v. McWhirter*,
  376 F.2d 102 (5th Cir. 1967) ............................................................................................. 14-15

**Rules**

CPLR 5201 ....................................................................................................................................... 9

CPLR 5224 ............................................................................................................................... passim

FRCP 37 ......................................................................................................................................... 15

FRCP 45 ............................................................................................................................... 9, 14-15

FRCP 69 ...................................................................................................................... 5, 7, 9, 14-15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS P. KOESTLER,<br><br>                                          Petitioner,<br><br>         -against-<br><br>MARTIN SHKRELI,<br><br>                                          Respondent. | Civil No. 16-cv-7175 (AJN) |

MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL JUDGMENT ENFORCEMENT DISCOVERY FROM
THE JUDGEMENT DEBTOR MARTIN SHKRELI AND FROM
KANG HAGGERTY AND FETBROYT LLC

The petitioner in this case and the applicant for relief herein, by his counsel, Scarola Zubatov Schaffzin PLLC, submits this memorandum in support of his motion to compel judgement enforcement discovery, pursuant to notices properly issued and served, from the judgement debtor, respondent Martin Shkreli, and from non-party Kang Haggerty and Fetbroyt LLC.

*Statement of Facts and Background*

The petitioner in this case, Thomas P. Koestler (the "Creditor"), was awarded a judgment in this Court against respondent Martin Shkreli for the amount of $2,614,930 in accordance with this Court's Order dated and entered on February 6, 2017 (ECF #22, Scarola Decl., Ex.[1] A) (the "Judgment"). Mr. Shkreli has not satisfied the Judgment or paid any amount whatsoever toward the Judgment. (Scarola Decl., ¶ 2 (discussing communications with one of Mr. Shkreli's

---

[1] Exhibits referred to in this Memorandum are attached to the accompanying Declaration of Richard J.J. Scarola, dated October 8, 2020 (the "Scarola Decl.") (Mr. Scarola is one of the attorneys for the Judgment Creditor).

Case 1:16-cv-07175-AJN   Document 39   Filed 10/29/20   Page 5 of 20

attorneys confirming that no part of the Judgement has been satisfied))

By way of background, the Judgment arises from an award in arbitration, confirmed by this Court, which in turn arose from amounts owed by Mr. Shkreli to the Creditor. (Scarola Decl., Ex. A)

By way of further background, while the Creditor's Judgment has nothing to do with Mr. Shkreli's other business activities, Mr. Shkreli has significant public notoriety as a result of those activities and is currently incarcerated. Specifically, he was sentenced by the United States District Court for the Eastern District of New York (Matsumoto, J.) to serve 84 months in prison after conviction by a jury of securities fraud on March 9, 2018. (ECF #565 in *USA v. Shkreli*, 1:15-cr-00637-KAM (E.D.N.Y.) (the "Criminal Case")) Mr. Shkreli is also known even more widely for his conduct in connection with the pharmaceutical product Daraprim, a drug used, among other purposes, for treatment of certain infections and persons with compromised immune systems such as patients suffering from AIDS, for which Mr. Shkreli is reputed to have been responsible for a 5,000+% price increase after the drug was acquired by a company he controlled at the time, Turing Pharmaceuticals ("Turing"). (*See* Scarola Decl., Exs. B and C (also available at https://www.forbes.com/sites/luketimmerman/2015/09/23/a-timeline-of-the-turing-pharma-controversy/#1af0e56e771d and https://www.nytimes.com/2015/09/21/business/a-huge-overnight-increase-in-a-drugs-price-raises-protests.html)) Turing changed its name to Vyera Pharmaceuticals, LLC ("Vyera"). (Scarola Decl., ¶ 4)

Mr. Shkreli is currently incarcerated at the Federal Correctional Institution — Allenwood Low in White Deer, PA 17887 (the "FCI"). Scarola Decl., ¶ 4.

Notwithstanding his conviction and incarceration, Mr. Shkreli apparently had and has extensive assets sufficient to satisfy the Judgment.

Mr. Shkreli also owned substantial assets subject to a forfeiture order in the Criminal Case (its ECF #680, Scarola, Decl., Ex. D), including art and collectibles such as a Picasso paining and a unique, one-copy-only music album purchased by Mr. Shkreli for $2 million from its creators, the musical group Wu-Tang Clan (an album created with provision that it could not be played widely and/or exploited commercially), and which is the subject of a coming Netflix documentary (Scarola Decl., Ex. E (also available at https://www.nme.com/en_asia/news/netflix-film-on-martin-shkrelis-2-million-purchase-of-wu-tang-clan-album-announced-2738462#:~:text=Netflix%20have%20announced%20details%20of,directed%20by%20Paul%20Downs%20Colaizzo)).

Mr. Shkreli currently has additional substantial assets. Mr. Shkreli is involved in ongoing litigation over his role and activities with Turing/Vyera, and is a defendant in a case brought by the Federal Trade Commission (the "FTC"), along with a number of state attorneys general, *FTC et al. v. Vyera Pharmaceuticals, LLC, et al.*, 1:20-cv-00706-DLC (S.D.N.Y.) (the "FTC Case"). The FTC has alleged in its Amended Complaint in that case (Scarola Decl., Ex. F; FTC Case ECF #91) with regard to Phoenixus AG (Phoenixus"), that Mr. Shkreli "owns approximately [redacted] of Phoenixus shares and controls approximately [redacted] of shareholder votes," and that Phoenixus in turn wholly owns Vyera today. (*Id*. ¶¶ 25-26, 46) Mr. Shkreli answered the FTC Amended Complaint allegations on September 15, 2020, disclosing his specific ownership and voting interests in Phoenixus (FTC Case ECF #258), but by letter application dated October 1, 2020 (Scarola Decl., Ex. G, FTC Case ECF #287), his counsel asked the Court that that version of Mr. Shkreli's Answer be stricken in favor of a redacted version and the Court in the

FTC case granted that application by Order dated October 5, 2020 (Scarola Decl., Ex. H, FTC Case ECF #288).  A copy of Mr. Shkreli's redacted Answer is at (Scarola Decl., Ex. I, FTC Case ECF #287-1).  The redacted version of the answer does not disclose Mr. Shkreli's ownership and voting interests in Phoenixus (*see id*. at ¶ 46) (though it confirms that Phoenixus is the sole owner of Vyera (*id*. at 25-26)).  These are highly unusual circumstances in that the original answer and disclosure of the pertinent information was a matter of the public record for approximately 20 days, was viewable and viewed by counsel and many others and was in fact apparently published by some on the Internet.  (Scarola Decl., ¶ 8)  In light of the October 1 redaction Order in the FTC Case (Scarola Decl., Ex. H, FTC Case ECF #288), it is unclear whether the originally filed information may be quoted or referenced as to its content.  This is further reason the Judgment Creditor needs to compel proper judgment enforcement discovery. The circumstances speak for themselves as to whether there is a good faith basis for the inquiry, and it is submitted that there is such good faith basis.

Notably, Mr. Shkreli was apparently found by prison authorities to be operating the business formerly known as Turing ― now known as Vyera ― while incarcerated (apparently including by means of a contraband cell phone) in contravention of the restrictions to which he was subject.  (*See* Scarola Decl., Ex. J (also available at https://www.wsj.com/articles/martin-shkreli-steers-his-company-from-prisonwith-contraband-cellphone-11551973574))

Mr. Shkreli also has had the wherewithal to commence substantial litigation while incarcerated.  In one instance, in 2019, he commenced litigation against Retrophin, Inc., a company in which he had previously had a substantial or controlling interest, and certain of its senior officers and Directors.  The Complaint in that case sought recovery of at least $30 million, and the case was apparently settled (apparently on confidential terms), in a manner favorable to

4

Mr. Shkreli.  (Scarola Decl., ¶ 10; *see also Shkreli v. Aselage et al.*, 1:19-cv-05120-DAB (S.D.N.Y.), ECF #5 at ¶ 278 and #18)

Currently, Mr. Shkreli, one of his colleagues, Kevin Mulleady (who is apparently the current Chairman of Phoenixus and the former CEO of Vyera[2]), Vyera and Phoenixus are all defendants in the FTC Case.  The litigation is apparently extremely active and proceeding on a fast track.  (Scarola Decl., ¶ 11)  In the FTC Case, according to the case docket, defendants have been or are currently represented in the case by a number of prominent law firms:

Mr. Shkreli:  Duane Morris LLP and Kang Haggerty and Fetbroyt LLC

Mr. Mulleady:  Kasowitz Benson Torres LLP

Vyera:  Morgan, Lewis & Bockius LLP (previously, Dechert LLP)

Phoenixus:  Morgan, Lewis & Bockius LLP (previously, Dechert LLP)

and it is reasonable to believe that those large and well-known law firms are being paid substantial sums by the defendants in the FTC Case for their defense.  (Scarola Decl., ¶ 11) Given that the defendants are Mr. Shkreli, two companies of which he is the principal owner (directly or indirectly) and in which he has the controlling interest and Mr. Mulleady, Mr. Shkreli's colleague and the Chairman of one of those companies, it is also reasonable to believe that the payments for that legal representation are coming from the two corporate defendants Mr. Shkreli effectively owns and controls or from other resources in Mr. Shkreli's control.

A.  *Discovery Sought from Mr. Shkreli*

Mr. Shkreli was served by the Creditor, through counsel, with judgment enforcement papers in an effort to enforce the Judgment at issue here on June 5, 2020.  Those papers were served pursuant to FRCP Rule 69, authorizing use of New York State judgment enforcement

---

[2] *See* FTC Case ECF #287-1, ¶ 47, Scarola Decl., Ex. I.

5

devices. The papers included an information subpoena in accordance with NY CPLR 5224. A copy of the information subpoena that the Creditor asks Mr. Shkreli be compelled to answer by this application (together with a copy of certain of the related judgment enforcement papers sent at the same time but not currently in issue) is attached to the Scarola Decl., Ex. L (*see also* Scarola Decl., ¶ 12).

The judgment enforcement papers were served upon Mr. Shkreli at his place of incarceration, addressed to:

> Mr. Martin Shkreli
> (Inmate I.D. #87850-053)
> Federal Correctional Institution (FCI) – Allenwood Low
> P.O. Box 1000
> White Deer, PA 17887

As discussed below in *Argument* § I., (i) the prison authorities at Mr. Shkreli's place of incarceration returned acknowledgement of receipt of the package sent and (ii) Mr. Shkreli's counsel also wrote to the Creditor's counsel discussing the content of papers sent only to Mr. Shkreli.

The subject matter of the judgment enforcement discovery inquiries made are also summarized in Argument § I.

B. *Discovery Sought from the Kang Firm*

Similar judgment enforcement papers have been served (on June 9, 2020) to one of the principal law firms, Kang Haggerty and Fetbroyt LLC (the "Kang Firm"), representing Mr. Shkreli in the FTC Case and also in a variety of other matters (Scarola Decl., ¶ 14 and Ex. L), because it is believed that those attorneys have material, non-privileged information pertinent to the effort to collect the Creditor's Judgment. As with Mr. Shkreli, The Kang Firm was served by the Creditor, through counsel, with judgment enforcement papers in an effort to enforce the

6

Judgment at issue here pursuant to FRCP Rule 69, authorizing use of New York State judgment enforcement devices. The papers included an information subpoena in accordance with NY CPLR 5224. (*Id.*)

By way of background, counsel for the Creditor was contacted by Edward Kang of the Kang Firm at various times in 2020 to discuss the Judgment. (Scarola Decl., ¶ 15) As noted above, Mr. Kang and the Kang Firm also represent Mr. Shkreli as co-counsel in the FTC case. The Scarola Declaration points out that further information about the contacts from the Kang Firm could be provided, but in deference to the possibility that Mr. Shkreli or Mr. Kang might assert that such information is restricted from disclosure (for example, as communications constituting settlement communications that should not be disclosed under a rule addressed to settlement communications), that further detail is not set forth here. (*Id.*)

The Judgment Creditor and his counsel understand and believe that Mr. Kang and his firm have been serving in the role as a general business and legal advisor to Mr. Shkreli on a variety of matters, not all of which would be subject to the attorney-client privilege merely because Mr. Shkreli is a client and Mr. Kang and his colleagues are attorneys. (Scarola Decl., ¶ 16) The Creditor discusses in *Argument* § II. that a similar position as to the role of the Kang Firm has been taken by the FTC in the FTC Case and that the FTC's position has been sustained by the Court in that case at least in material part.

At bottom, there are strong indications leading the Creditor and his counsel to believe that the Kang Firm possesses both information pertinent to judgment enforcement not subject to the attorney-client privilege, and also possibly money held by for Mr. Shkreli's benefit (in escrow or otherwise) that would be recoverable through judgment enforcement efforts.

7

C. *The Discovery Sought from Mr. Shkreli and the Kang Firm Has Not Been Provided*

Neither Mr. Shkreli nor the Kang Firm have provided any formal written objection to the judgment enforcement papers served upon them and neither has provided substantive responses. Accordingly, the Judgment Creditor makes this request that this Court compel those responses. (Scarola Decl., ¶ 18)

Below, we set forth additional bases for believing responses are in fact due. In that discussion, for the sake of completeness, we also address some points raised in informal correspondence we received from the Kang Firm.[3]

I.

THERE IS NO BASIS FOR MR. SHKRELI NOT TO
FULLY RESPOND TO THE CREDITOR'S JUDGMENT
ENFORCEMENT INFORMATION REQUESTS

With regard to the discovery devices posed to Mr. Shkreli, as the judgment debtor owing more than $2,600,000, he has no basis not to be responding in full. He has not responded at all (Scarola Decl., ¶ 18), and complete responses should be compelled by an Order from this Court.

The written questions posed to Mr. Shkreli, Scarola Decl., Ex. L, are comprehensive, but reasonably tailored in the circumstances to seek information about Mr. Shkreli and his assets which will assist the Creditor in collecting the Judgment. In particular, the inquiries address the basic questions of assets Mr. Shkreli has or has received, assets of which he has disposed, assets and interests held for him by others and his interests in the Phoenixus/Vyera companies.

---

[3] The Creditor notes that other judgment enforcement papers have been served upon persons and entities affiliated in one way or another with Mr. Shkreli. While remarkably few responses have been received, an effort to compel responses from those persons and entities is not joined here in the hope that complete responses from Mr. Shkreli and the Kang Firm will be sufficient to allow enforcement of the Judgment through appropriate turnover proceedings. The Creditor will of course raise issues as to other judgment enforcement papers and insufficiency of responses as necessary, if it becomes necessary.

8

In the interest of completeness, we also point out the following law and facts.

FRCP 69(a)(2) provides: "In aid of the judgment or execution, the judgment creditor … may obtain discovery from any person — including the judgment debtor — as provided in these rules or by the procedure of the state where the court is located." FRCP 45 of course provides generally for the use of subpoenas. NY State CPLR 5201 *et seq.* more specifically provides for, among other measures, use and service of judgment enforcement papers known as restraining notices, subpoenas and information subpoenas. NY CPLR 5224 is addressed to information subpoenas that, as described therein, provide written questions to a judgment debtor or other person to be answered under oath and returned promptly to the judgment creditor/counsel.

As noted above, Mr. Shkreli was served at the FCI facility where he is incarcerated with a NY CPLR 5224 information subpoena (among other judgment enforcement papers). (Scarola Decl., Ex. L) FCI prison officials acknowledged receipt of the package sent (though indicated that a postage-paid envelope included in accordance with the NY CPLR procedures would be held because Mr. Shkreli is an incarcerated person). (Scarola Decl., Ex. N)

Correspondence later received from the Kang Firm confirmed that both Mr. Shkreli and Mr. Shkreli's counsel at the Kang Firm had received these papers because the Kang Firm attorneys stated they were aware of the planned service of similar discovery documents on another person associated with Mr. Shkreli, Evan Greebel.[4] (Scarola Decl., ¶ 24)

---

[4] The fact that the Creditor planned such service was not disclosed anywhere except in the one and only set of related papers sent to Mr. Shkreli (Mr. Greebel had not yet been served and no other paper outside of the Creditor's counsel's possession mentioned the plan to serve Mr. Greebel). (Scarola Decl., ¶ 24) In other words, Mr. Shkreli and his counsel could only have known of the plan to serve Mr. Greebel through the papers delivered to Mr. Shkreli. An electronic copy of certain papers was only later provided to the Kang Firm at their request. (Scarola Decl., ¶ 24)

9

No objection or other formal response in accordance with NY CPLR requirements was made by or on behalf of Mr. Shkreli with regard to the NY CPLR 5224 information subpoena discovery inquiries to him.

The Kang Firm, in informal correspondence, asserted that Mr. Shkreli could not be served at his place of incarceration, in its correspondence with the Creditor's counsel, stating that Mr. Shkreli was residing outside the jurisdictional scope of a permissible judgment enforcement information subpoena. (Scarola Decl., ¶ 26) The Kang Firm is not correct.

The law is well-settled that an incarcerated person is presumptively deemed to reside where, in substance, he resided prior to incarceration, absent specific and concrete evidence to rebut the presumption by establishing that the prisoner had taken affirmative steps to reorder his affairs so as to change citizenship to a different place. *See Hall v. Curran*, 599 F.3d 70 (1st Cir. 2010) (addressing citizenship for purposes of diversity jurisdiction: "In cases involving prisoners, the courts presume that the prisoner remains a citizen of the state where he was domiciled before his incarceration, even if he is subsequently incarcerated in a different state.")

Mr. Shkreli has made a recent application for early release from prison because of concerns over exposure to the coronavirus pandemic and his assertions he could find a cure for the novel coronavirus pandemic/COVID-19 and indicated in those papers that if released he would in fact continue to reside in New York City (with his fiancé). (Scarola Decl., Ex. O, pp. 1, 17, 20-21 (ECF #729 in the Criminal Case))

But in all events, a judgment debtor may be served with a CPLR 5224 information subpoena even if the judgment debtor resides outside the state at the time of service[5]:

---

[5] CPLR 5224(a)(3) provide in relevant part: "Service of an information subpoena may be made by registered or certified mail, return receipt requested." It contains no restriction as to the location of the person to be served.

10

> "the enforcement procedures authorized by the CPLR provide for service of an information subpoena with service of such information subpoena by registered or certified mail, return receipt requested. CPLR Rule 5224(a)(3). This type of subpoena does not prohibit service of an information subpoena upon a Judgment Debtor located outside the state. This statute clearly provides the alternative to the restrictions set forth in CPLR § 2303 or Judiciary Law § 2–b. *See Banco Do Estado De Sao Paulo S.A. v. Mendes Junior International Company and Construtora mendes Junior S/A,* Supreme Court, Commercial Division (J. Ramos, 1997), N.Y.Law Journal, Nov. 24, 1997, p. 29 col. 4, *aff'd* 249 A.D.2d 137, 672 N.Y.S.2d 28 (1st Dept.1998).
>
> "Based upon the statutory language in CPLR Rule 5224(a)(3), this Court determines that the Judgment Creditor is entitled to serve an information subpoena upon the Judgment Debtor, even if located out of state."

*Aquavella v. Equivision, Inc*., 181 Misc.2d 322, 324 (S. Ct. Monroe Ct. 1999), *app dism*., 270 A.D.2d 972 (4th Dept. 2000)*; see also Harbor Footwear Group, Ltd. v. ASA Trading, Inc.*, 1 Misc.3d 911(A) (S. Ct. Nassau Co. 2004).

The Creditor's counsel provided in writing to the Kang Firm the reasons Mr. Shkreli could not avoid the information subpoena based upon his current status as an incarcerated person in Pennsylvania. The Kang Firm provided no response or any reason to conclude Mr. Shkreli is not required to respond fully to the information subpoena (and no cognizable written objection to particular requests).

Accordingly, this Court should order the relief requested compelling Mr. Shkreli's full disclosures in response to the information subpoena inquiries served upon him.

## II.

### THERE IS NO BASIS FOR THE KANG FIRM NOT TO FULLY RESPOND TO THE CREDITOR'S JUDGMENT ENFORCEMENT INFORMATION REQUESTS

As with Mr. Shkreli, the Kang Firm has not responded at all, at least by way of any formal response, to the information subpoena served upon it. (Scarola Decl., ¶¶ 18, 31) The Kang Firm's full and complete responses should also be compelled by an Order from this Court.

As with the written questions to Mr. Shkreli, the same questions posed to the Kang Firm are

comprehensive, but reasonably tailored in the circumstances to seek information about Mr. Shkreli and his assets that will assist the Creditor in collecting the Judgment. (Scarola Decl., Ex. L)

In the interest of completeness, we point out the following law and facts to address issues raised informally by the Kang Firm in email correspondence we have received after its receipt of the judgment enforcement subpoena.

First, two issues are easily dispatched. The Kang Firm initially stated that a necessary certification in the information subpoena required by CPLR 5224 was missing, and also that a required self-addressed stamped envelope for return of the information subpoena was missing. (Scarola Decl., ¶ 33) Counsel for the Creditor pointed out the location of the certification and the Kang Firm then acknowledged that it was properly stated. (Scarola Decl., ¶ 33) With regard to the ostensibly missing self-addressed stamped envelope, counsel for the Creditor pointed out that it was personally observed to be included in the envelope sent to the Kang Firm, but that another could be supplied if that would be necessary to put the issue to rest. (Scarola Decl., ¶ 33) No request for another such envelope or any other further comment on the subject was received from the Kang Firm. (Scarola Decl., ¶ 33)

Second, the Kang Firm asserted generally that information sought might be subject to the attorney-client privilege. (Scarola Decl., ¶ 34) It did not make any particularized objection. (Scarola Decl., ¶ 34) Certainly, the Creditor agrees that no genuinely privileged information should be turned over. At the same time, (i) the bulk of the information sought by its nature would not be subject to the privilege (for example, information as to Mr. Shkreli's assets is not a request for information constituting the request for or giving of legal advice), and (ii) recent proceedings in the FTC Case make clear that substantial information possessed by the Kang Firm concerning Mr. Shkreli is not subject to the attorney-client privilege, even as apparently now

12

conceded by Mr. Shkreli himself. (Scarola Decl., ¶ 34)

As to this latter point, the Court in the FTC Case has apparently recently determined that at least many communications Mr. Shkreli has had with the Kang Firm while in prison are not privileged (at least because they were not had in a confidential setting, if not for additional reasons inherent in the nature of the communications), including many with Kang Firm attorney Kandis Kovalsky which were apparently recorded by the federal Bureau of Prisons and which the FTC has accessed through the Bureau of Prisons. (Scarola Decl., ¶ 35, Ex. O (FTC Case ECF #278)) The parties to that case are currently reviewing and negotiating as to which communications will be deemed not privileged (Scarola Decl., Ex. P (FTC Case ECF #284)), but the Court has already directed that some information pertaining to the Kang Firm previously filed under seal as being privileged be unsealed (Scarola Decl., ¶ 35).

One of the documents recently unsealed is correspondence from the FTC to the Court asserting bases for contending that the Kang Firm possesses information pertinent to Mr. Shkreli's assets and a possible effort to shield them from creditors and potential creditors:

> "Based on Mr. Shkreli's submission to the Court, it is clear that Ms. Kovalsky has communicated with Mr. Shkreli on a wide range of legal and business issues, some of which were relevant to the FTC's investigation and to this case. … During our pre-complaint investigation, the FTC learned that Mr. Shkreli was considering placing his Phoenixus shares in a trust. Ms. Kovalsky appeared to be advising Mr. Shkreli on this issue. … The FTC was concerned that Mr. Shkreli might be trying to shield his Phoenixus assets … ."

> "In addition, it has also become clear that Ms. Kovalsky operates as Mr. Shkreli's advisor on other relevant business matters. For example, Ms. Kovalsky appears to have acted as a conduit for communications from others to Mr. Shkreli on matters that were, as Mr. Shkreli put it to co-Defendant Kevin Mulleady, "too sensitive to talk about … ."

(Scarola Decl., Ex. Q (FTC Case ECF #282))

While this is the FTC's contention, not proof, the Creditor submits it supplies more than a good faith basis to believe that the Kang Firm is possessed of unprivileged information

13

pertaining to Mr. Shkreli's assets from which the Creditor seeks to recover.

To complete the discussion of comments received from the Kang Firm, the question was raised whether the Kang Firm could not properly be served with the judgment enforcement papers at issue because it is not within New York State. (Scarola Decl., ¶ 38) In fact, the Kang Firm may be so served because it is located within 100 miles of the Creditor's counsel's office (a measurement apparently not contested by the Kang Firm). (Scarola Decl., ¶ 38) FRCP Rule 69 provides that judgment enforcement procedures "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies" and that a creditor may obtain enforcement in aid of discovery "as provided in these rules or by the procedure of the state where the court is located."

As discussed, the Creditor has, consistent with this Rule, served the Kang Firm with a New York State information subpoena.

FRCP 69's provision that "a federal statute governs to the extent it applies" and that a creditor may seek discovery "as provided in these rules" permits the Creditor to use not only the New York State subpoena procedure, but also to serve a Rule 45 subpoena. Rule 45(c) provides that a creditor may serve a subpoena *duces tecum* on a non-party such as the Kang Firm "within 100 miles of where [it] … regularly transacts business in person … ." Thus, a Rule 45(c) subpoena *duces tecum* for a live deposition with document production may be served upon the Kang Firm by the Creditor seeking the same information being sought now by the less burdensome means of the NY CPLR 5224 information subpoena procedure. After diligent search, no case identified concludes that the CPLY 5224 procedure is not available in this scenario, and certainly none has been identified by the Kang Firm to the Creditor's counsel. (Scarola Decl., ¶ 38)

If for any reason the Court would find that the CPLR 5224 procedure were unavailable,

14

the Creditor would of course serve such a Rule 45(c) subpoena. *See*, *e.g.*, *U.S. v. McWhirter*, 376 F.2d 102 (5th Cir. 1967). The Creditor might still proceed in that way at a later point. But the Kang Firm having identified no case or other authority to the effect that the less burdensome New York State information subpoena device may not also be used as permitted by the subpoena authority set for in FRCP 45(c) and 69, this Court should compel full and complete responses. *Cf. Sabol v. Brooks*, 469 F.Supp.2d 324 (D. Md. 2006) ("the federal rules take precedence over conflicting state law…. Regardless of the geographic restrictions, or lack thereof, contained in Maryland Rule 2–633, this Court's ability to apply the enforcement procedures established by that rule, including its ability to subpoena a non-party to appear for an examination, therefore is subject to the geographic limitations contained in Rule 45).

III.

THE RESPONDING PARTIES SHOULD BE COMPELLED TO
REIMBURSE THE CREDITOR'S ATTORNEYS' FEES AND
COSTS ASSOCIATED WITH THIS APPLICATION

Pursuant to FRCP 37(a)(5)(A), and 37(d)(3), the Creditor also seeks an order directing Mr. Shkreli and the Kang Firm to pay the Creditor's reasonable expenses incurred in making this application, including reimbursement of reasonable attorneys' fees.

Federal Rule of Civil Procedure 45(e) states that the issuing court may hold in contempt a "person who, having been served, fails with adequate excuse to obey the subpoenas." Further Federal Rule of Civil Procedure 37 permits a court upon the granting of a motion to compel discovery to award the moving party its reasonable expenses incurred in making the motion, including attorneys' fees.

Because there is no good reason for respondents' failure to reply, even by way of any

formal or particularized objection,[6] to legitimate enforcement discovery measures in the face and context of a wholly-unsatisfied $2.6+ million judgement, this relief is warranted. Because this is the first application for such relief by the Creditor, no stronger sanction is sought, though in these circumstances, one might be permitted by the applicable rules.

The Creditor, through its counsel, includes a certification that it has in good faith conferred or at least has attempted to confer with the respondents in an effort to obtain the disclosure at issue without court action. (Scarola Decl., ¶ 40)

IV.

THE COURT SHOULD DIRECT THAT THE
RESPONDING PARTIES BE SERVED WITH
THIS APPLICATION AS PROPOSED IN THE
ACCOMPANYING DRAFT ORDER TO SHOW CAUSE

The accompanying draft proposed order to show cause provides for service upon each of respondents by both Federal Express overnight courier delivery or USPS next available day and certified mail, returned receipt requested delivery, in each case at the address where they were served with the judgment enforcement papers in issue (for Mr. Shkreli, at the prison where he is incarcerated, and for the Kang Firm, at its main office in Philadelphia, Pennsylvania). A copy of the papers would also be sent by email to attorney Kandis Kovalsky at the Kang Firm. It is self-evident from the facts discussed above that both respondents received the earlier papers by the certified mail method, it appears that the Kang Firm represents Mr. Shkreli in practice in this matter and the courier service delivery (along with email to the Kang Firm) is further assurance

---

[6] For the avoidance of doubt, the points made by the Kang Firm were in no way a formal or particular objection, but rather, made in informal email correspondence and as noted above are not even included here with this application in deference to whether the Kang Firm would consider them confidential for some reason. (Scarola Decl., ¶¶ 15, 18)

that both respondents will receive service. (Scarola Decl., ¶ 41)

Dated: October 8, 2020
       New York, NY

                                      SCAROLA ZUBATOV SCHAFFZIN PLLC

                                      By_____
                                             Richard J.J. Scarola
                                      *Attorneys for Petitioner Thomas P. Koestler*
                                      1700 Broadway
                                      41st Floor
                                      New York, NY 10019
                                      Tel.: (212) 757-0007