UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS P. KOESTLER, <br><br>           Petitioner, <br><br>    -*against*- <br><br> MARTIN SHKRELI, <br><br>           Respondent. | Civ. No. 16-cv-7175-AJN |

MEMORANDUM IN SUPPORT OF
MOTION FOR TURNOVER
AND APPOINTMENT OF A RECEIVER

SCAROLA ZUBATOV SCHAFFZIN PLLC
*Attorneys for Petitioner Thomas P. Koestler*
1700 Broadway ― 41st Floor
New York, NY  10019
Tel.: (212) 757-0007

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

*Procedural Background and Pertinent Facts* ...............................................................................1

*The Creditor Proposes that a Receiver Be Appointed to Take
Custody of and Liquidate the Judgment Creditor's Interest in Phoenixus* ...................................7

*Argument* ...................................................................................................................................11

      THE COURT SHOULD COMPEL
      TURNOVER AND LIQUIDATION OF
      THE PHOENIXUS STOCK BY A RECEIVER ....................................................11

          A.   *The Phoenixus Stock is Subject to Turnover*...................................................11

          B.   *The Phoenixus Stock Should be Delivered to a
               Receiver Appointed by the Court for Liquidation*..........................................13

*Conclusion* .................................................................................................................................15

TABLE OF AUTHORITIES

**Cases**

*Am. Honda Fin. Corp. v. Route 57 Dev. LLC*, 7:13-CV-0,
   260, 2016 WL 843377 (N.D.N.Y. Mar. 1, 2016) ................................................................. 13

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*,
   No. 14 CIV. 6512 (KPF), 2017 WL 3394604 (S.D.N.Y. Aug. 8, 2017) ................................. 12

*Chlopecki v. Chlopecki*,
   296 A.D.2d 640 (3d Dep't 2002) ......................................................................................... 14

*Colfin Bulls Funding B, LLC v. Ampton Investments, Inc.*,
   62 Misc. 3d 1208(A) (N.Y. Sup. Ct. 2018) ..................................................................... 13-14

*Daum Glob. Holdings Corp. v. Ybrant Digital Ltd.*,
   No. 13-CV-3135 (AJN), 2015 WL 5853783 (S.D.N.Y. Oct. 6, 2015) .................................... 11

*Gallant* v. *Kanterman*,
   249 A.D.2d 59 (1st Dep't 1998) .......................................................................................... 12

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
   No. 03 CV 6413 (ILG), 2006 WL 616267 (E.D.N.Y. Mar. 6, 2006) ............................... 13, 14

*Gryphon Dom. VI, LLC v. APP. Int'l. Fin. Co., B. V.*,
   41 A.D.3d 25 (1st Dep't 2007) ............................................................................................ 11

*Hotel 71 Mezz Lender LLC v. Falor*,
   14 N.Y.3d 303 (2010) .......................................................................................................... 14

*Koehler v. Bank of Bermuda Ltd.*,
   12 N.Y.3d 533 (2009) ..................................................................................................... 11-12

*Ninth Ave. Realty, LLC v. Guenancia*,
   No. 102725/10, 2013 WL 9528299 (Sup. Ct. N.Y. Co. Sept. 6, 2013) .................................. 12

*U.S. v. Vulpis*,
   967 F.2d 734 (2d Cr. 1992) ............................................................................................ 10, 13

**Rules**
CPLR 5228 ................................................................................................................ 1, 9, 13, 15

CPLR 5201 ................................................................................................................................ 12

Fed. R. Civ. P. 69 ............................................................................................................... 1, 9, 11

NY CPLR 5205 ........................................................................................................................... 4

NY CPLR 5225 .................................................................................................... 1, 11-13, 15

**Other Authorities**
Siegel, New York Practice, § 512 (2004) ................................................................................. 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS P. KOESTLER, | |
| Petitioner, | Civ. No. 16-cv-7175-AJN |
| -*against*- | |
| MARTIN SHKRELI, | |
| Respondent. | |

MEMORANDUM IN SUPPORT OF
MOTION FOR TURNOVER
AND APPOINTMENT OF A RECEIVER

Petitioner/Judgment Creditor Dr. Thomas P. Koestler (the "Creditor"), by his attorneys, Scarola Zubatov Schaffzin PLLC, submits this Memorandum in support of his motion, brought by Order to Show Cause, pursuant to Fed. R. Civ. P. 69 and NY CPLR 5225(a) and 5228(a), for an order directing respondent/judgment debtor Martin Shkreli ("Shkreli" or the "Judgment Debtor") to turn over the stock he owns in Phoenixus AG ("Phoenixus" and, as to Shkreli's ownership interest in it, the "Phoenixus Stock") to a receiver appointed by this Court to be sold for the purpose of satisfying the judgment debt in this case (Mr. Shkreli's Judgement in favor of the Creditor), and also, pursuant to NY CPLR 5225(c), to execute any such documents necessary to effect delivery of the Phoenixus Stock to such receiver or as otherwise directed by the Court.

*Procedural Background and Pertinent Facts*[1]

The Creditor makes this motion as part of a years-long effort to collect a $2.6 million+ judgment owed to him by Mr. Shkreli. (Scarola Decl. ¶ 2) Specifically, this action was filed by

---

[1] The facts discussed here are set forth in the accompanying Declaration of Richard J.J. Scarola (the "Scarola Decl.") dated March 3, 2021. Exhibit references herein are to the exhibits to the Scarola Decl. and are in the form: "Ex.___."

the Creditor in 2016 to confirm an arbitration award in his favor against Mr. Shkreli. (*Id.*) The Court entered judgment confirming the award in the amount of $2,614,930 on February 6, 2017 (the "Judgment"). (*Id.*, and Ex. A (ECF #22)) To date, not a penny of the Judgment has been satisfied. (*Id.*)

According to extensive publicly available information, and as discussed in the Scarola Decl. and herein, Mr. Shkreli is the controlling and possibly majority owner of the stock of Phoenixus AG, a valuable privately-held Swiss corporation. (Scarola Decl. ¶ 3) Phoenixus AG wholly owns Vyera Pharmaceuticals LLC ("Vyera"), an entity in the pharmaceutical industry based in New York City with a portfolio of drugs currently in the marketplace and others in pipeline development. (*Id.*) While it is impossible to determine an exact value of the Phoenixus Stock because Phoenixus is a privately held company, given the company's whole ownership of Vyera and Vyera's valuable business, Shkreli's Phoenixus Stock may be adequate to satisfy the Judgment. *Id.*

The Creditor points out that he already has a motion before this Court to compel disclosures by Mr. Shkreli and some of his attorneys in response to judgment enforcement discovery requests that have received no substantive responses. (*See* ECF ##31-45) The motion was submitted as of November 6, 2020, with the filing of reply papers (ECF #43, 44), and is *sub judice* subject either to scheduling oral argument or decision. For the avoidance of doubt, this application does not moot the earlier motion to compel in any way. The earlier motion to compel seeks general judgment enforcement discovery, and until the judgment is satisfied, the Creditor is pursuing all of the information he has requested, both in that application and in other discovery requests (including some that may also need to be brought before the Court with requests to

compel[2]). While the Creditor believes that this proceeding for turnover of the Phoenixus Stock may result in satisfaction of the judgment, until that occurs, the Creditor is entitled to and will pursue all avenues for discovery and enforcement. (Scarola Decl. ¶ 4)

The Creditor assumes that this Court has very general familiarity with the Judgment and with the affairs of Martin Shkreli which were discussed in the earlier application to compel disclosure, including the facts that Mr. Shkreli is currently incarcerated for securities fraud (an 84 month sentence)[3] and will be for a number of years to come and also that he is currently a defendant in an action brought by the Federal Trade Commission (the "FTC") and numerous state attorneys general (the "FTC Case"[4]) relating to his operation of the business of Phoenixus (and its operating subsidiary, Vyera). Those facts discussed in the earlier application to compel are not repeated in full here, but were set forth in support of that application in the Declarations of Richard J.J. Scarola dated October 8, 2020 and November 6, 2020 (ECF ## 34 and 44, respectively), and an additional copy is annexed as Exs. B and C to the Scarola Decl. (without exhibits) for ease of reference. Among other things, that earlier discussion disclosed that Mr. Shkreli and his companies are represented before the FTC by three separate firms including two large national firms. (Scarola Decl. ¶ 5) In short, it is apparent that Mr. Shkreli has both significant legal issues and substantial influence and wealth, especially in his ownership of Phoenixus, with which to mount defense to them. (*Id.*)

---

[2] Judgment enforcement discovery requests have been served upon numerous persons and entities in Shkreli's orbit but have either been ignored or have been given only perfunctory, no-content responses. (Scarola Decl. ¶4, n.3)

[3] The Shkreli criminal case is *USA v. Shkreli*, 1: 15-cr-00637-KAM (E.D.N.Y.) (the "Criminal Case").

[4] The FTC case is *FTC et al. v. Vyera Pharmaceuticals, LLC, et al.*, 1: 20-cv-00706-DLC (S.D.N.Y.)

With regard to this application, and the Phoenixus Stock in particular, it is not and cannot be disputed that the Judgment remains unsatisfied (Scarola Decl. ¶ 6), even though Mr. Shkreli has such significant wealth through his interest in Phoenixus/its stock, which is not exempt from execution under applicable New York law (*see* NY CPLR 5205 (listing property exempt from judgment enforcement) (the Phoenixus stock does not fall within any exempt category)). Shkreli's ownership interest in Phoenixus — and indeed his continued control and operation of the company while he has been incarcerated — have been admitted, open and notorious. (*Id.*)

Mr. Shkreli, Phoenixus and Vyera each answered the Amended Complaint in the FTC Case with express admission of Shkreli's ownership interest in Phoenixus and a statement of the amount of his shareholdings and of the interest he controls. (Scarola Decl. ¶ 7 and FTC Case ECF ## 253 and 258)) Notably, after those answers were filed, those FTC Case defendants asked that those answers retroactively be sealed, and no longer publicly available, and the Court in that case granted the request (and hence those documents are not included here as exhibits). New answers were filed with the amounts of the Shkreli ownership interest redacted, stating, by example from Shkreli's answer:

> "1.    Mr. Shkreli admits that he is a minority shareholder of Vyera."[5]
>
> ***
>
> "46.    Mr. Shkreli admits that he is reflected on the books and records of Phoenixus AG as a minority shareholder, owning approximately [redacted] of Phoenixus AG shares and controlling approximately [redacted] of shareholder votes."

(Scarola Decl. Ex. D, FTC Case ECF #287-1)  The actual amounts stated and later sealed were seen and apparently are still viewable in Internet archives (along with descriptions of the

---

[5] Because it is widely discussed by Mr. Shkreli and others in all other statements that Vyera is wholly-owned by Phoenixus, it appears that this reference is intended to be to "minority shareholder" ownership of Phoenixus.

information published on the Internet), but in deference to the sealing order in the FTC Case, subject to further direction from this Court, the precise numbers are not disclosed here.  (Scarola Decl. ¶ 7)

For current purposes, however, the precise percentage of the Shkreli ownership interest in Phoenixus is not critical to know because it is sufficient to know for this application that he has *an ownership interest* so that it can be turned over to satisfy the Judgment.  (Scarola Decl. ¶ 8)

As noted above, Mr. Shkreli's continued control and operation of Phoenixus/Vyera while he has been incarcerated has also been open and notorious.  This has been widely described both in media reports, but also in filings by the prosecutors in Shkreli's criminal case (responding to his applications for early release) and by the FTC itself.  (Scarola Decl. ¶ 9)

Perhaps most notably at the level of public discussion, Mr. Shkreli was apparently found by prison authorities to be operating the business now known as Vyera while incarcerated (apparently including by means of a contraband cell phone) in contravention of the restrictions to which he was subject.  (*See* Scarola Decl. ¶ 10 and Ex. E (also available at https://www.wsj.com/articles/martin-shkreli-steers-his-company-from-prisonwith-contraband-cellphone-11551973574))

Mr. Shkreli's active involvement in the affairs of Phoenixus and its Vyera subsidiary has apparently continued and been described in allegations by the government prosecutors and other counsel involved in his legal matters.  Though much more could be quoted, a recent summary of the current view of the various government authorities is set forth by the U.S. Attorney's Office for the Eastern District of New York, the office that prosecuted the Shkreli Criminal Case, in response to Shkreli's most recent application for early/compassionate release for reasons ostensibly related to the COVID-19 pandemic (his second such application (both were denied)).

(Scarola Decl. ¶ 11) Opposing the application for early release and referring to the FTC Case, the Eastern District U.S. Attorney wrote:

> "Significantly, the pleadings [in the FTC Case] allege that [an] anticompetitive scheme is ongoing, and that [Shkreli] has continued his involvement in the scheme during the pendency of this criminal case, including while incarcerated at FCI Allenwood Low. (*Id*. ¶¶ 36-46). For example, the defendant has remained in regular contact with [FTC Case co-defendant and Phoenixus/Vyera officer] Mulleady and others involved in the scheme through phone calls, emails, in-person visits, unsanctioned WhatsApp messaging and potentially other means since his incarceration in September 2017. (*Id*. ¶¶ 44). In those communications, the defendant continues to discuss strategies to prevent generic competition to [a Phoenixus/Vyera product]. (*Id*.)."

(Scarola Decl. Ex. F, Criminal Case ECF #759, p. 5)

The deep involvement of Shkreli in the ongoing business of Phoenixus/Vyera is alleged in far greater detail in a shareholders' derivative action recently commenced against Phoenixus by a number of its minority shareholders in *Wormwood Capital LLC et al. v. Mulleady et al*. in New York State Supreme Court (N.Y. County ― Index No. 656481/20 (filed November 23, 2020)) (Scarola Decl. ¶ 12 and Ex. G):

> "1. By this action, shareholder-investors sue on behalf of their company Phoenixus A.G. -- an ostensible pharmaceutical company dominated by the infamous 'Pharma Bro' and imprisoned felon Martin Shkreli -- for the harm the company has suffered at the corrupt hands of Shkreli's handpicked Board members and managers.
>
> "2. Shkreli founded Phoenixus as a Swiss corporation in 2015, and he has always been its largest shareholder and able to exercise voting control over it. …
>
> "3. The claims in this lawsuit arise because Shkreli has exercised his share ownership and voting control to install his lackeys on Phoenixus' Board and in its C-Suite offices -- and in Shkreli-like fashion they have wasted corporate assets and misused investors' capital. …
>
> "4. … Further still, the Defendants illicitly collaborated with Shkreli to control Phoenixus/Vyera's business, acting contrary to the company and shareholders' best interests.
>
> "5. Just days ago [before this filing on November 23, 2020], Plaintiffs were informed that Shkreli has proposed a shareholders' 'vote' to alter the composition of the Phoenixus Board, evidently more to his liking. *No explanation* was given for the proposed changes in the Board's membership. In any event, given Shkreli's effective

6

voting control, the process will be a sham. Regardless of the best interests of the company and all its shareholders, at Phoenixus *Shkreli gets what Shkreli wants*."

(Emphases in original.)

The Wormwood complaint also alleges facts suggesting that the Phoenixus /Vyera business is indeed substantial. By way of many examples, it alleges:

(i) That the investors/plaintiffs paid $5.5 million for their minority ownership (¶ 7), and

(ii) that the companies' various transactions are measured in the tens of millions of dollars (¶ 88-136).

(Scarola Decl. ¶ 13 and Ex. G)

Much else could be said and written about this Judgment Debtor, Mr. Shkreli, and about Phoenixus. For current purposes, it is sufficient to state that the Judgment Creditor's Phoenixus stock plainly has substantial value sufficient to satisfy his debt to the Creditor (and any other possible creditors) and is plainly a unique asset ─ one for which a receivership makes sense to maximize the asset's value in the interest of all concerned. (Scarola Decl. ¶ 14)

*The Creditor Proposes that a Receiver Be Appointed to Take
Custody of and Liquidate the Judgment Creditor's Interest in Phoenixus*

In light of the nature of the asset — ownership in a closely held company that is valuable and engaged in complex business — there is a need for a receiver who can act with knowledge appropriate to the task of liquidating the Shkreli stock holdings and Phoenixus ownership interest. The truth of the Wormwood allegations is not itself necessary to this application, but those allegations, to the extent there is any question or doubt, are strong indication the asset is valuable and worth this effort, and also that the requested appointment of a receiver to take control and sell the asset is in the interest of all concerned. The asset should be marshalled and disposed of in an orderly and competent way through a sophisticated, neutral third-party' involvement in this process. (Scarola Decl. ¶ 15)

Accordingly, as discussed herein and in the Scarola Decl., the Creditor (i) asks that a receiver be appointed to take control of and liquidate Mr. Shkreli's ownership interest in Phoenixus and to liquidate it to satisfy the Judgment (and deal with the remainder in accordance with applicable law) and (ii) that the Court consider appointment as receiver of a particular individual discussed herein (below) with the requisite knowledge and skills to maximize the value of this particular asset.

For the sake of completeness, it is noted that as part of Shkreli's sentence in the Criminal Case, he was to forfeit approximately $7.4 million, and certain specific assets were identified for forfeiture up to the amount owed in the Criminal Case (s*ee* Scarola Decl. ¶ 17 and Ex. H (Criminal Case ECF # 680 (the "Forfeiture Order"))), including Shkreli's interest in "Vyera Pharmaceuticals (formerly known as Turing Pharmaceuticals),"[6] but also a brokerage account of $5,000,000 in cash, a Picasso painting, other works of art and a particularly notable property ― the one-of-a kind record album made by the performing artists Wu-Tang Clan known as "Once Upon A Time in Shaolin" that is the subject of an upcoming Netflix documentary. Mr. Shkreli paid approximately $2 million for that property and it may have value in excess of that amount today. (See Scarola Decl. ¶ 17)

Significantly, in his recent application for early release from prison, Shkreli represented that he "has paid more than two thirds of his forfeiture obligation and has fully satisfied the other monetary portions of his sentence." (Scarola Decl. ¶ 18 and Ex. I (Criminal Case ECF #754), at. p. 3) The U.S. Attorney, in its response quoted above in other respects, does not disagree. (Scarola Decl. ¶ 18 and also Ex. F (Criminal Case ECF #759)) The Creditor's counsel has asked the U.S. Attorney's Office for an update on the status of satisfaction of the Forfeiture Order

---

[6] The Forfeiture Order references only Vyera. It does not mention Phoenixus.

(among other facts), but was given no information, and then later served formal judgment enforcement discovery requests directed to those issues which were properly served but which did not receive a reply required by law. (*See* Scarola Decl. ¶ 18 and Ex. J)  It appears clear, however, that the Wu-Tang property and other valuable property have not been sold by the U.S. Attorney and remain available to satisfy the Shkreli Forfeiture Order and any/all other Shkreli judgment creditors to the extent the Shkreli $5 million brokerage account mentioned in the Forfeiture Order left any shortfall, such that all of the other assets identified in that Order unrelated to Phoenixus/Vyera are or will be sufficient to satisfy all outstanding Shkreli financial judgment obligations in the Criminal Case (and otherwise to any other judgment creditors). (*See* Scarola Decl. ¶ 18)  As well, even if those assets were not sufficient, the sale of the Shkreli interest in Phoenixus by a receiver upon turnover as requested in this application would satisfy this Judgment and any amounts outstanding on any other Shkreli judgment obligations. (*See Id.*)

The Creditor proposes, in light of the foregoing, additional steps to ensure that it is seamless for this Court to grant the requested relief and for the shareholding interest at issue to be liquidated in an orderly way and in a manner consistent with the interests of the government (under the Forfeiture Order in the Judgment Debtor's Criminal Case or otherwise).  Specifically, the Creditor proposes both that (i) service of these papers be made upon the United States Attorney for the Eastern District, with attention to one of the lead attorneys (the Assistant U.S. Attorney who signed the government's papers opposing Mr. Shkreli's recent request for early release due to the pandemic — Alixandra Smith (Scarola ¶ 19 and Ex. F (Criminal Case ECF #759)); and (ii) that a receiver be appointed to liquidate those shares, in accordance with CPLR 5228 which provides for such relief (as to which the Court may look in accordance with Fed. R. Civ. P. 69(1)), stating in relevant part:

> "(a) Appointment of receiver. Upon motion of a judgment creditor, upon such notice as the court may require, the court may appoint a receiver who may be authorized to

> administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment. As far as practicable, the court shall require that notice be given to the judgment debtor and to any other judgment creditors of the judgment debtor."

*See U.S. v. Vulpis,* 967 F.2d 734, 736-37 (2d Cr. 1992) ("It was well within the discretion of the district court in the present case to determine that a traditional sale by the sheriff at auction to the highest bidder, with no supervision by a court officer would not suffice …").

With regard to the person to be appointed as a receiver, the Court of course will exercise its judgment as to an individual with appropriate background and skills in whom the Court would have confidence for this purpose, but because of the unique nature of the property involved — closely held shares in a specialized pharmaceutical business — the Creditor makes the suggestion for appointment of a person known to him to have knowledge, experience and skills relevant to companies with this profile which would help maximize the value of the shares in their liquidation.  (*See* Scarola Decl. ¶ 20)

The person suggested is Sundar Kodiyalam, and his *curriculum vitae* is attached to the Scarola Decl. as Ex. K (*see* Scarola Decl. ¶ 21).  To be clear, the Creditor and Mr. Kodiyalam have known each other for some time in a professional capacity, have regard for each other and have had some business dealings in common.  (*Id.*)  If the Court is inclined to entertain appointment of Mr. Kodiyalam as the receiver, both the Creditor and Mr. Kodiyalam would provide such other, further disclosure and response to inquiry as the Court would require as a condition of the appointment.  (*Id.*)

But any prior connections between the Creditor and Mr. Kodiyalam should have no bearing on his service as a receiver or the Court's selection of him because all interests are aligned ─ every interested person or party would want to see the highest value achieved for the shares to be liquidated (including the Judgment Debtor).  (*See* Scarola Decl. ¶ 22)

The Creditor and counsel have spoken with Mr. Kodiyalam and based on the description of the circumstances given to him, he has indicated as of such conversations his willingness to accept the Court's appointment of him as receiver if the Court is inclined to make that appointment.  (*See* Scarola Decl. ¶ 23)

*Argument*

THE COURT SHOULD COMPEL
TURNOVER AND LIQUIDATION OF
THE PHOENIXUS STOCK BY A RECEIVER

A federal court may entertain a proceeding for turnover to satisfy a judgment debt under the procedural rules of the state in which it sits.  The Federal Rules of Civil Procedure provide that "[t]he procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1).  The relevant portion of New York's Civil Practice Law and Rules is Article 52, that, among other relief, "authorizes a judgment creditor to file a motion against a judgment debtor to compel turnover of assets."  *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 537 (2009).

A.      *The Phoenixus Stock is Subject to Turnover*

Under CPLR § 5225(a), a debtor can be ordered to turn over any personal property in which it has an interest to satisfy a money judgment, including even assets located outside the state. *Daum Glob. Holdings Corp. v. Ybrant Digital Ltd.,* No. 13-CV-3135 (AJN), 2015 WL 5853783, at *2 (S.D.N.Y. Oct. 6, 2015), *enforcement and receivership granted,* No. 13-CV-3135(AJN), 2018 WL 2122816 (S.D.N.Y. May 8, 2018) (Nathan, J.), citing *Gryphon Dom. VI, LLC v. APP. Int'l. Fin. Co., B. V.,* 41 A.D.3d 25, 31 (1st Dep't 2007) (overturning lower court order finding that CPLR 5225(a) could not reach property outside of New York).  *See also*

11

*Koehler*, 12 N.Y.3d at 541 ("CPLR 5225(a) ... contemplate[s] an order, directed at a defendant who is amenable to the personal jurisdiction of the court, requiring him to pay money or deliver property").

Corporate stock and other indicia of ownership of value are personal property subject to CPLR Article 52's enforcement procedures. *See, e.g., Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 CIV. 6512 (KPF), 2017 WL 3394604, at *4 (S.D.N.Y. Aug. 8, 2017) (finding that stock certificates are assignable, transferrable property for purposes of CPLR Section 5201, and collecting cases as to various other indicia of ownership that are similarly property subject to turnover to satisfy a judgment); *Ninth Ave. Realty, LLC v. Guenancia*, No. 102725/10, 2013 WL 9528299, at *2 (Sup. Ct. N.Y. Co. Sept. 6, 2013) ("Corporate shares are personal property subject to CPLR Article 52's enforcement procedures"); *Koehler*, 12 N.Y.3d at 541 (treating stock as property, the turnover of which court can order pursuant to Section 5225); *Gallant* v. *Kanterman*, 249 A.D.2d 59, 62 (1st Dep't 1998) ("Under CPLR [§] 5201(c)(4), a stock certificate is 'property capable of delivery,' and therefore subject to enforcement of a money judgment.").

It has not been disputed that Mr. Shkreli is subject to the jurisdiction of this Court. (*See* Scarola Decl. Exs. B and C and ECF ##31-45) Mr. Shkreli owns the majority of shares in Phoenixus AG. (*See* Scarola Decl. ¶ 7 and Ex. D (FTC Case ECF #287-1)) Because stock is property subject to turnover under CPLR Article 52 and Mr. Shkreli has not paid the Judgment, Mr. Shkreli should be ordered to turn over his ownership interest in Phoenixus to satisfy the Judgment.

Further, the Court should order that if, in response to this application, Mr. Shkreli claims he faces any impediment to turnover of his ownership interest in Phoenixus, pursuant to CPLR 5225(c), he must execute and deliver any document necessary and take any other act necessary to

12

make such ownership interest available for satisfaction of the Judgment. *See Am. Honda Fin. Corp. v. Route 57 Dev. LLC*, 7:13-CV-0260, 2016 WL 843377, at *14 (N.D.N.Y. Mar. 1, 2016). This may include executing any paperwork required to deliver the Phoenixus Stock, to obtain replacement stock certificates if the originals are claimed to be lost or any other steps necessary to make the ownership interest asset available to satisfy the Judgment. *See id.* (agreeing that a court may direct a party "to execute substitute stock certificates as necessary to effect delivery under CPLR Section 5225(c)"); *Colfin Bulls Funding B, LLC v. Ampton Investments, Inc.*, 62 Misc. 3d 1208(A) (N.Y. Sup. Ct. 2018) (judgment debtor was required to take whatever actions necessary including issuing new stock certificates or executing an affidavit attesting to the fact that the certificates were lot, in order to have the shares of stock brought to New York for turnover.)

### B. The Phoenixus Stock Should be Delivered to a Receiver Appointed by the Court for Liquidation.

In cases where the property subject to turnover may be difficult to value or is not conducive to sale in the open market through a typical sheriff's sale, property may be turned over to a receiver for sale and distribution of the proceeds to satisfy the judgment. *See* CPLR 5228(a) ("Upon motion of a judgment creditor…the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment"); *see U.S. v. Vulpis*, 967 F.2d 734 at 736-37 (quoted *supra*); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, No. 03 CV 6413 (ILG), 2006 WL 616267, at *4 (E.D.N.Y. Mar. 6, 2006) (appointing a receiver under CPLR § 5228 to sell a patent to satisfy a judgment); 11 Weinstein, Korn & Miller, New York Civil Practice, ¶ 5228.05, at 52-499 (2004) (noting that pursuant to CPLR 5228, the Court should "appoint a receiver when disposition of the debtor's property by private negotiation

13

is preferable to an execution sale"); David Siegel, New York Practice, § 512 (2004) (stating that a receivership is appropriate when the "property interest involved is intangible, lacks a ready market, and presents nothing that a sheriff can work with at an auction" such as the interest of a judgment debtor in a professional corporation). The determination as to whether to appoint a receiver is within the court's discretion. *Chlopecki v. Chlopecki*, 296 A.D.2d 640, 641 (3d Dep't 2002).

In *Gasser*, the plaintiffs/judgment creditors sought to enforce a $15 million judgment by recovering a patent which had been fraudulently conveyed to the defendant/judgment debtor. There, in appointing a receiver, the court found that "because of the lack of marketability of the Patent and the difficulty in determining its true value … it is unlikely that a turnover of the Patent to the sheriff would result in satisfaction of some or all of the Judgment." 2006 WL 616267, at p.4. Likewise, in *Colfin Bulls*, the court appointed a receiver on a turnover motion for both the sale of valuable antiques and shares in a closely held corporation. With respect to the shares in particular, the court noted that it was "unclear" whether the shares were marketable, so "turning the property over to the sheriff would not be helpful in trying to satisfy the judgment." *Colfin Bulls*, 62 Misc. 3d 1208(A), at *7, citing *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 318 (2010) (upholding appointment of receivership over membership interests in LLCs in judgment enforcement proceeding).

Here, Phoenixus is a closely held corporation in a specialized market. Phoenixus is plainly valuable, but sale of an ownership interest in it would not be most effectively achieved in a simple sheriff's sale-style auction. A receiver can put the asset for sale in the way most likely to achieve the highest price. *See Colfin Bulls*, 62 Misc. 3d 1208(A), at *7, *Hotel 71*, 14 N.Y.3d at 318. The Creditor has suggested one person who has the professional experience in such matters and in the relevant market. The Court might prefer a different receiver. But in all

14

events, a receivership is the best way to maximize value for all concerned. Accordingly, the Court should exercise its discretion to appoint a receiver to oversee the liquidation of Mr. Shkreli's ownership interest in Phoenixus to satisfy the Judgment and dispose of all proceeds of the liquidation as otherwise directed by law.

*Conclusion*

For the reasons set forth herein, the Court should grant the Creditor's application for an order directing turnover of Mr. Shkreli's ownership interest in Phoenixus with further direction that Mr. Shkreli execute and deliver any document necessary and take any other act necessary to make such ownership interest available for satisfaction of the Judgment, in accordance with CPLR 5225(a) and 5228(a), and directing appointment of a receiver to oversee the liquidation of Mr. Shkreli's ownership interest in Phoenixus to satisfy the Judgment and dispose of all proceeds of the liquidation as otherwise directed by law.

Dated: March 3, 2021
        New York, NY

                               SCAROLA ZUBATOV SCHAFFZIN PLLC

                               By_____
                                      Richard J.J. Scarola
                               *Attorneys for Petitioner Thomas P. Koestler*
                               1700 Broadway — 41st Floor
                               New York, NY 10019
                               Tel.: (212) 757-0007