# SCAROLA ZUBATOV SCHAFFZIN PLLC

Richard J.J. Scarola
rjjs@szslaw.com
(212) 757-0007 ext. 3201

April 30, 2021

Hon. Alison J. Nathan
United States District Judge
United States District Court
 — Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

   Re: *Koestler v. Shkreli*, No. 16-cv-7175 (AJN)

Dear Judge Nathan:

  We are counsel to the petitioner and judgment creditor in this case, Dr. Thomas P. Koestler. We write in response to the letter from non-party witness Kandis L. Kovalsky/Kang Haggert & Fetbroyt LLC dated April 28, 2021 (ECF #64). That letter states that it is written pursuant to Your Honor's Individual Practices Rule 2.C — which provides for a discovery issue letter-motion description of disputed issues and requesting an informal conference to address them. Ms. Kovalsky seeks a motion to quash or in the alternative for a protective order with respect to a non-party subpoena.

  By way of background, that non-party subpoena follows up on judgment enforcement discovery sought previously but not provided either by the judgment debtor, Mr. Shkreli (Ms. Kovalsky's and her firm's former client in some 20 matters (per her letter)), or provided by Ms. Kovalsky's firm. In fact, substantially the same discovery at issue now on Ms. Kovalsky's letter is also at issue on a motion to compel compliance, including compliance by Mr. Shkreli, with judgment enforcement information subpoenas in this case. (*See* ECF ##31-45) Those information subpoenas were and to this day have been effectively ignored by the judgment debtor and Mr. Kovalsky's firm. (*Id.*) Ms. Kovalsky and her firm represented Mr. Shkreli in opposing that motion to compel and that motion is *sub judice*. (*Id.*) A principal ground for opposition to that motion to compel was that Mr. Shkreli's incarceration for a felony conviction was an obstacle to his compliance (notwithstanding the judgment debtor's extensive and highly visible and public business and financial activity since judgment was entered in this case in February 2016 and since his conviction and incarceration in 2018). (*Id.*; and in particular, ECF ##33, 34 and 42)

  Ms. Kovalsky and her firm have recently withdrawn as Mr. Shkreli's counsel in this case, though not until months after service of the subpoena at issue. They withdrew at around the time petitioner moved for turnover and a receiver. The judgment owed to the petitioner remains

1700 BROADWAY 41ST FLOOR NEW YORK, NY 10019
TEL 212-757-0007 FAX 212-757-0469 WWW.SZSLAW.COM

SCAROLA ZUBATOV SCHAFFZIN PLLC

unpaid and briefing was completed today on petitioner's motion for turnover of certain assets and appointment of a receiver to sell them (with concurrence from the U.S. Attorney for the Eastern District of New York (Mr. Shkreli is incarcerated pursuant to a criminal conviction in the Eastern District and owes more than $2 million to the government in connection with a forfeiture order in his criminal case; the U.S. Attorney for the Eastern District holds certain assets against that forfeiture order and has advised this Court that it has no objection to the relief petitioner seeks in this Court for a receiver to sell what is apparently the most significant asset to pay, first, the government, and then, this petitioner)). (See ECF ##46-63; 66-67)

We appreciate that that is a mouthful of background, but this is an unusual case and that background, as well as the further background set forth at more length in petitioner's two pending motions, is essential to understanding why the unusual step of seeking discovery from an attorney has even been considered. The scope of this letter does not allow for a deeper dive into all of that further background, but as a letter predicate to an informal conference in accordance with Your Honor's Rule 2.C, we believe the following can be stated as clear in opposition to a motion to quash or for a protective order.

First, there has been a pattern of gamesmanship in obstructing discovery and judgment enforcement — we have been stonewalled not only by Mr. Shkreli, but also by the business entities he apparently controls and by the numerous attorneys who have represented him in various matters (in some instances, declining to reply at all).

We submit that judgement enforcement is not a game, but that a game has been played to obstruct it at all turns.

Second, Ms. Kovalsky and her firm (and other counsel) surely have knowledge that is not privileged under any conceivable theory (certainly none has been asserted to us) and is discoverable — specifically and most obviously, that they have been paid and know the source of their payments. That is a subject fair game for judgment enforcement discovery. More, Ms. Kovalsky's firm seems to have been at the center of the recent Shkreli enterprises, and possibly many of those payments in addition to its own, stating that they have represented Mr. Shkreli in 20 matters, including eight litigations, since April 2018, a month after his conviction and incarceration. Public records in some of that litigation apparently indicate that the Federal Trade Commission (the "FTC"), one of Mr. Shkreli's current litigation adversaries, has taken the position that Ms. Kovalsky and her firm have had the role of Mr. Shkreli's general business advisor during his incarceration. More, Mr. Shkreli is in fact embroiled in many lawsuits and has been represented by at least four other law firms we know of based upon public records. Thus, the source of their payments alone is a basis for discovery from Mr. Shkreli's counsel — directly — of that non-privileged information.

But it needs to be stressed that this issue and the related discovery has a deeper and more broad significance. As discussed at some length in the motion papers now before the Court, Mr. Shkreli apparently continues to control a substantial pharmaceutical company even while incarcerated. His ownership interest in that pharmaceutical company is actually also a so-called "substitute asset" in connection with the forfeiture order in his criminal case (and is also the

subject of this petitioner's turnover application (as noted, with concurrence from the government)). Mr. Shkreli has no known or apparent assets that have not been turned over to the U.S Attorney as such substitute assets. Mr. Shkreli has recently indicated, in papers submitted on the pending motions in this Court, that he has been able to muster more than $5,000,000 of payments against his forfeiture obligations. Significantly, Mr. Shkreli's obligations under his forfeiture order in his criminal case, for example, at ECF #540, ¶ 11(e) in *USA v. Shkreli*, 1: 15-cr-00637-KAM (E.D.N.Y.), require that any income, compensation or essentially any benefits Mr. Shkreli might reap from any of the substitute assets be set aside and made available for his forfeiture obligations. That circumstance leads to one of two conclusions pertinent to Mr. Shkreli's extensive use and self-evidently extensive payment of counsel: If he can be paying many attorneys, extensively, then either (i) he is doing so in violation of his forfeiture order with revenue from his currently forfeited assets or (ii) he has other, hidden, assets or resources that have not been disclosed to the petitioner here or even to the government in his criminal case (such assets would have been added to the array of substitute assets subject to his forfeiture order and should also be made available to satisfy all of his judgment obligations if not).[1]

Third and finally, given the limited space and scope of this submission, we point out that there are indeed many other areas — including matters on which Mr. Shkreli's privilege, to the extent he had one, may have been waived — and which would likewise be permissible subjects for inquiry. Relatedly, it is axiomatic that not every communication with an attorney is privileged or confidential. When an attorney is in the role of a business advisor as may well have been the case for Ms. Kovalsky and her firm (and as the FTC may have indicated it believes is the case), it is even more likely that documents and information possessed by an attorney are not possessed in a privileged capacity. We therefore do not waive any position as to those or other elements of discovery beyond the payment of attorneys issue discussed above. At the same time, we fully recognize how nettlesome this area is or at least could be. At present, we are hopeful not to have to venture into that area, hoping that the motions currently pending may bring this judgment enforcement effort to resolution and render all of the rest moot.

At bottom, the petitioner/judgment creditor here has one interest — that his judgment be satisfied, and with as little further effort and cost as possible. To date, however, the effort to have satisfaction of his judgment has met with extraordinary obstacles. It is hoped that those obstacles will now fall with the pending motions for relief, but given the history of this effort, no avenues to recovery, or information that could lead there, could be waived. Petitioner and his counsel hope to address these issues with the Court efficiently.

Respectfully submitted,

Richard J.J. Scarola

---

[1] For the sake of completeness, we recognize the possibilities that Mr. Shkreli's many attorneys work for free or that they are paid by some benefactor. While we recognize the theoretical possibilities, we believe that they are so unlikely that they should not distract from the discussion and line of argument set forth above.