

# SCAROLA ZUBATOV SCHAFFZIN PLLC

Richard J.J. Scarola
rjjs@szslaw.com
(212) 757-0007 ext. 3201

July 23, 2021

Hon. Alison J. Nathan
United States District Judge
United States District Court — Southern District of New York
United States Courthouse
40 Foley Square
New York, NY  10007

      Re:    *Koestler v. Shkreli*, No. 16-cv-7175 (AJN)

Dear Judge Nathan:

We represent the Judgment Creditor/Petitioner.  We write in accordance with the schedule in the Order dated July 19, 2021 (ECF # 95), for reply to any further submission filed by the Judgment Debtor Mr. Shkreli as to his proposal regarding the person the Court should select as the Receiver and his suggested changes to the proposed order we had submitted.

Mr. Shkreli's counsel late Wednesday night transmitted by email a letter and a CV for Daniel R. Alonso, indicating neither would be filed by ECF with the Court because Mr. Alonso had requested that his CV not be filed on the public docket.  The letter's second through fourth pages also bear the legend at the top: "PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT."  We are not aware of a basis for either document to be withheld from the docket or treated in any manner as confidential (or, in fact, anything in Mr. Alonso's CV that is arguably confidential).  We object to the submission not being filed on the record.

*With Regard to Mr. Shkreli's Innuendo Attacks on the Judgment Creditor and Mr. Kodiyalam*:  Mr. Shkreli has only whatever standing to weigh in on the Court's choice of a Receiver as the Court gives him.  We submit that he has squandered that opportunity to be heard by predicating his position on baseless, unexplained and unsubstantiated assertions to the effect

**SCAROLA ZUBATOV SCHAFFZIN PLLC**

that the Judgment Creditor is in "collusion with former Board Members of Phoenixus," and that both he and Mr. Kodiyalam have some improper motive (presumably, apart from a creditor's desire to be paid). Unsubstantiated assertions like this are irresponsible at best. But to put to rest any doubt, I represent that our client would affirm under oath (if the Court deem this worth inquiry) that he has no prior or current relationship with former Phoenixus Board members.

Similarly, it is unseemly for Mr. Shkreli to be suggesting that Mr. Kodiyalam's professional experience does "not qualify him for the role of an *unbiased* receiver" (emphasis added) and that he "lacks the most important quality — neutrality." Wednesday night's letter submission is replete with such innuendo as to alleged bias, but is based on nothing. Mr. Shkreli's counsel points to the Judgment Creditor's earlier disclosure that he has known Mr. Kodiyalam in a professional capacity for some time through earlier business dealings and that they have regard for each other through having worked with each other in the past.[1] Nothing about that suggests any bias (whatever "bias" could mean in this context) — to the extent those characteristics are even germane here to an effort to sell stock to satisfy a judgment under the supervision of, and with the Receiver answerable to, this Court. More, it is not surprising in this unique scenario — prospective sale of stock in a closely held company in a specialized sector of the pharmaceutical industry (over Mr. Shkreli's resistance) — that the Judgment Creditor would turn to professionals known to him to identify someone with the unique requisite experience and skills. The innuendo-attacks based upon assertions such as bias are not only unsubstantiated but, ultimately, irrelevant and off the mark.

---

[1] As stated at ECF # 48, ¶ 21, both the Judgment Creditor and Mr. Kodiyalam would provide any further information the Court directs.

SCAROLA ZUBATOV SCHAFFZIN PLLC

Hon. Alison J. Nathan
July 23, 2021
Page 3

Indeed, the irrelevance is especially clear in the alignment of interests. The Receiver's compensation will (or at least likely will, at this Court's discretion) be commensurate with the value (price) obtained — CPLR 5228 provides generally for compensation as a percentage of such value. Thus, the interests of the Receiver and Mr. Shkreli are coextensive (and consistent with the Judgment Creditor's desire finally to be paid).

*With Regard to the Choice of Receiver (Requirements and Qualifications)*: The Shkreli bias-predicate for opposing Mr. Kodiyalam is also simply off the mark in light of the work to be done. Leaving aside the baselessness of the bias assertions, the task is selling Mr. Shkreli's shares. Simply stated, that requires marketing them to the highest bidder. Given that Phoenixus is a closely held company predominantly owned and effectively controlled by Mr. Shkreli, the universe of potential buyers is not a ready-made market. As Mr. Shkreli's various counsel at times have pointed out for some years (including in his criminal case as to his forfeiture order), some of those potential buyers are other shareholder constituencies within Phoenixus. If there are interested potential buyers among them, then the requisite skill set is negotiation and deal-making. Other potential buyers would be companies in the pharmaceutical industry or private equity/venture capital funds interested in the Phoenixus products and pharmaceutical assets. The identity of such companies and firms is not a subject of general knowledge or even readily ascertainable to someone not in the field. The knowledge needed to identify such potential buyers is knowledge of the relevant sectors of the pharmaceutical, biotechindustry in which Phoenixus/Vyera operates and knowledge of the particular companies likely to have interest based in turn on knowledge about their current businesses. That knowledge is venture capital background and a long and deep experience in the pharmaceutical industry and its relevant components. Mr. Kodiyalam's career history reveals both the general negotiation and deal-

making skillset, and, and likely to be of greater import down the road, the specialized knowledge and venture capital experience in the relevant market. Wednesday night's letter does not contest that those are the needs and that Mr. Kodiyalam fills them. The Judgment Creditor proposed him because he believes Mr. Kodiyalam has the necessary knowledge and skills in abundance.

By contrast, Mr. Shkreli does not articulate any alternative description of the specific task ahead, or the specifics of what Mr. Alonso would do. Mr. Alonso, insofar as disclosed, has no such plan.

Mr. Alonso does not appear to have the relevant capabilities. Mr. Alonso's CV reflects an objective track record of professional accomplishments in private practice and in positions as a state and federal prosecutor. But none of the experience identified fits the specialized need here. Mr. Alonso's recent practice history consists of private sector work including most recently a short period in private practice (since February 2020) preceded by serving since 2014 as General Counsel for a company described on its website as providing corporate risk management and compliance assistance. He has apparently had court-appointed and similar roles, but only for tasks unrelated to what is needed here — for example, (i) in 2008 as a "receiver" in the a very different sense of the term, tasked with recovering assets owned by the operator of a Ponzi scheme and distributing them to victims; (ii) serving in an independent disciplinary role for a county-level law enforcement body; and (iii) serving in other roles for individual companies described as "independent monitor" or "integrity monitor."[2] These are meaningful experiences for any lawyer. But they are not relevant to this Receivership need here

---

[2] In deference to Mr. Alonso's apparent desire not to have his CV revealed, we have made an effort not to make specific references to particular assignments by name or any other readily identifying characteristic.

## SCAROLA ZUBATOV SCHAFFZIN PLLC

— to deal-making generally or to marketing stock in a unique and specialized closely held Swiss company such as Phoenixus in particular. As to the knowledge base and skillset needed, nothing specifically pertinent is revealed. While Mr. Alonso might fulfil Mr. Shkreli's generalized assertions of a need for "integrity and independence" that he asserts "Mr. Alonso brings… to the table," nothing indicates he is right for the work now needed. Liquidating shares in a privately held, closely controlled specialty pharma company requires sector knowledge and experience that Mr. Alonso simply does not possess.

*What Is Really Going On Here?*: In that light, Mr. Shkreli should be happy with Mr. Kodiyalam in the role of Receiver. A significant and very real question that then arises is: Why is he not? We submit that his position is nothing more than a further act of misdirection ultimately intended to derail the process. Last week, Mr. Shkreli's counsel argued at length, at ECF # 88, pp. 14-17 (on July 15, 2021), that *there should be no receivership at all*, including, in substance, because the efforts of the Receiver would fail due to various obstacles posed by Swiss law.[3] Mr. Shkreli today controls Phoenixus. It is evident that Mr. Shkreli intends to try his very best to use that control to ensure that the Receiver fails and that Mr. Shkreli keeps control of Phoenixus. Yet Mr. Shkreli first proposed Mr. Alonso as Receiver on July 15, the same day that he filed ECF # 88, explaining his view that, in substance, he can use his control of Phoenixus effectively to block this Court's turnover order by somehow invoking Swiss law. In that light,

---

[3] To be certain it is clear, we point out that we absolutely disagree that Swiss law would interfere with the sale of the Shkreli shares — shares that have for many years been in government custody in Brooklyn, shares that have always been held and voted by Mr. Shkreli in the United States and shares that Mr. Shkreli voted last week from his Pennsylvania prison cell in the Phoenixus shareholder fight for control — and no credible reason has been presented as to why Swiss law would interfere.

SCAROLA ZUBATOV SCHAFFZIN PLLC

we submit that all of the arguments presented to the Court by Mr. Shkreli lack any credibility and should be rejected for the additional reason that they are mere pretext for more obstruction.

*Issues as to Terms of the Proposed Order*: The Court's July 19 Order authorizing these submissions directed that Mr. Shkreli's counsel also address "the basis for each of the changes made to the proposed order appointing a receiver filed by Mr. Koestler." Mr. Shkreli's submission now addresses only two points. First, Mr. Shkreli argues that the Receiver would not be entitled to a 5% commission. But our proposed order does not require that level of commission. Instead, it merely follows what is stated in the governing statute (NY CPLR 5228[4]) — *viz.*, that the Court shall determine a commission *up to the amount of 5%* of what is received and disbursed. The Shkreli letter concludes with a proposal that he "would agree with Mr. Alonso to a hybrid engagement letter providing for a reduced hourly rate plus a fee of not less than three (3%) percent for the [sic] Mr. Alonso's fees for his retainer." Whether or not Mr. Shkreli believes he has already tentatively struck such a deal with Mr. Alonso, this entire concept is at odds with NY CPLR 5228 and also what is going on here. A judgment debtor resisting the sale of his assets to satisfy his judgment does not get to strike deals with the receiver about engagement letters, hourly fees, retainers or anything else. The Court has discretion as described by statute to set a commission and that is what we proposed.

Mr. Shkreli's only other point is to object, without discussion, to the Receiver having "unfettered access to counsel." NY CPLR 5228 allows for counsel when ordered by the Court. We have explained previously the reasons this Receiver should have counsel, including Mr. Shkreli's apparent intention to use this control of Phoenixus to invoke Swiss law, however baselessly, to obstruct the Receiver. More generally, Mr. Shkreli is obviously well-armed with

---

[4] Mr. Shkreli's letter quotes from NY CPLR 5228, but identifies it as NY CPLR 5227.

**SCAROLA ZUBATOV SCHAFFZIN PLLC**

counsel and creativity.  A Receiver in this extremely unusual scenario will need counsel given that Mr. Shkreli can be expected to raise any obstacle his robust imagination can conceive.

\*\*\*

*Mr. Shkreli's Ongoing Control of Phoenixus and His Ongoing Disregard for the Law:* This further discussion is not responsive to the Court's July 19 Order at ECF # 95, but we believe it is important to raise again the extent to which Mr. Shkreli is acting in open and notorious disregard of the Judgment in this case and the Court's enforcement authority, and the bearing that has on his credibility and his proposals at issue now.  Taken as a whole, his and his counsel's conduct indicate that he will pose every obstacle he can to obstruct and avoid the sale of his Phoenixus stock.  Since April, his counsel has been arguing to this Court (inconsistently), (i) on the one hand, that Mr. Shkreli himself, rather than a receiver, is best-positioned to sell his Phoenixus stock[5] (despite having not done so while the Judgement has been extant for years), (ii) on another hand, that "Mr. Shkreli no longer controls the assets [that same stock] petitioner seeks" to be placed with a receiver because they have been forfeited to the government[6] but (iii) in Wednesday night's letter, that Mr. Shkreli should be able to select the Receiver to sell what he has not, based upon his view of "integrity" rather than the "subject matter expertise" of Mr. Kodiyalam which he asserts "should not be dispositive here."  I have by now worn thin my terms such as circus-like and Kafkaesque, so instead of repeating them, I simply submit that against that background, the notion that Martin Shkreli would select the Receiver to sell the stock that he

---

[5] At the July 1, 2021, hearing, Transcript (ECF # 86) p. 35, Ms. Murphy stated:  "Because the receiver can't do anything that Martin can't do. I mean, like, a receiver going into Swiss court and trying to liquidate that asset is far more difficult, or the government going in, than Martin doing it."

[6] Ms. Murphy's letter to the Court dated April 23, 2021.  (ECF #62)

**SCAROLA ZUBATOV SCHAFFZIN PLLC**

does not want sold — and do so based on his view of "integrity" rather than the potential Receiver's "subject matter expertise" — is, objectively, crazy.

But in fact, we learned this week that the facts are even more crazy than that. Mr. Shkreli's attorney who is carrying these arguments to the Court for him, while unable to arrange a "legal" call with him, nonetheless has sufficient access to him to take his instruction to act on his power of attorney that she holds to vote those same Phoenixus shares to fight and win the shareholder fight within Phoenixus on July 12. Specifically, on Tuesday of this week, we received long-overdue disclosure from a Phoenixus Board member, Akeel Mithani, in which Mr. Mithani stated: "To the best of my knowledge, Mr. Shkreli's attorney, Brianne Murphy, held a power of attorney that was used to vote his shares in Phoenixus AG." (Exhibit A, p. 14) While Mr. Mithani is not specific as to the time when Ms. Murphy held such power of attorney, she only entered this case in March of this year and it is therefore a reasonable inference that this power of attorney was obtained recently, is held currently and was used at the recent shareholder meeting to vote on Mr. Shkreli's behalf. Whether or not this was lawful or legally permissible, for current purposes, as to the Court's stock turnover Order, it is enough to say that these facts amplify the need to view what Mr. Shkreli says, does and proposes with the most heightened skepticism. And to the immediate point of Mr. Shkreli's arguments about this receivership, we submit that his counsel's dual role as (i) lawyer locating and proposing a receiver candidate and (ii) Shkreli Phoenixus proxy voter eliminates any credibility the Shkreli effort might have had left, such that his proposals should be wholly rejected for that reason alone.

Respectfully submitted,

Richard J.J. Scarola

Enclosure/Exhibit
By ECF